## HOLLAND v. STUCKEY et al.    (No. 11373.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 30, 1926. Rehearing Denied March 6, 1926.)

1. **Master and servant &#9758;358—Employer relying on exemption from common-law liability for injuries must show substantial compliance with Workmen's Compensation Act as to notice of election** (Workmen's Compensation Act 1917, pt. 3, § 19 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77]).

It is incumbent on employer, relying on exemption from common-law liability for injuries to employee, to show substantial compliance with Workmen's Compensation Act 1917, pt. 3, § 19 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77), as to notice of election.

2. **Master and servant &#9758;358—Mere posting of notice in plant 30 miles from place of injury held insufficient under Workmen's Compensation Act** (Workmen's Compensation Act 1917, pt. 3, § 19 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77]).

Mere posting of notice by employer in plant 30 miles from place of injury, where employer was engaged in different kind of work, under different name, that he carried liability insurance, *held* insufficient, under Workmen's

Compensation Act 1917, pt. 3, § 19 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77).

3. **Master and servant &#9758;358—To bind employer and employee under Workmen's Compensation Act, there must be mutual agreement, with full notice that employer is subscriber** (Workmen's Compensation Act 1917, pt. 3, § 19 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77]).

In order for employer and employee both to be bound under Workmen's Compensation Act 1917, pt. 3, § 19 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77), there must be a mutual agreement, with full notice on part of employer, either actual or constructive, of fact that employer is subscriber under the act, and that injured employee waives common-law right to sue for damages, and relies on right to recover under act.

4. **Master and servant &#9758;405(3)—Evidence held not to show employer gave notice that he carried insurance under Workmen's Compensation Act** (Workmen's Compensation Act 1917, pt. 3, § 19 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77]).

Evidence *held* not to show employer gave notice within Workmen's Compensation Act 1917, pt. 3, § 19 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246–77]) either actual or constructive, to employee that he, employer, carried liability insurance under Workmen's Compensation Act.

Appeal from District Court, Wichita County; Guy Rogers, Judge.

Action by T. Holland against W. A. Stuckey and others. From an adverse judgment, plaintiff appeals. Reversed and rendered for plaintiff.

Engelking & Dotson, of Electra, for appellant.

Kenley, Dawson & Holliday, of Wichita Falls, for appellees.

BUCK, J. In this case T. Holland sued the partnership of W. A. Stuckey & Son, C. A. Stuckey, for damages by reason of injuries alleged to have been sustained by plaintiff while engaged in laying a pipe line in Wichita county. He sued for $3,500 damages. The defendants answered, among other defenses, that they were subscribers under the Workmen's Compensation Act, and that at the time of the injury they had insurance with the United States Fidelity & Guaranty Company, and that they had given notice to the Industrial Accident Board of Texas of the fact that they had become subscribers, and that they had fully complied with the requirements of such law.

The cause proceeded to trial, and was tried before a jury on special issues. The jury found: (1) That the defendants failed to use ordinary care to provide the plaintiff with reasonably safe tools with which to perform the work in question; (2) that the servants of defendants, with whom the plaintiff was

working at the time of the alleged injury, released and let a six-inch pipe line fall upon the end of a pipe which plaintiff was holding; (3) that such servants were guilty of negligence by reason of their releasing and letting the six-inch pipe line fall upon the end of the 'pipe which plaintiff was holding; (4) that such negligence' was the proximate cause, in whole or in part, of plaintiff's injury, and but for which such injury would not have occurred; (5) that plaintiff was entitled to $3,500 damages; (6) that plaintiff was not negligent in failing to watch the movements of the other members of the pipe line gang when he attempted to pull the support out from under the pipe line; (7) that plaintiff was not negligent in standing over the pipe when he attempted to pull the same from under the pipe line; (8) that plaintiff was not negligent in failing to turn loose his pipe when the order to lower the pipe line was given; (9) that plaintiff was not negligent in attempting to pull the support from under the pipe line before the pipe line had been lifted clear of said support; (10) that the levers and timbers used by the pipe line crew were not the usual and customary equipment used in handling pipe lines of the kind in question; (11) that such levers and timbers used by the pipe line crew were defective.

, The court in his judgment, after setting out the charge of the court, including the issues and answers thereto, further found as follows:

"But it appearing to the court that the defendants herein had become subscribers under the Workman's Compensation Law prior to the injury, and it further appearing that defendants had complied with articles 5246–77, 5246–78 (Vernon's Ann. Civ. St. Supp.), by posting the notices required by the Industrial Accident Board in the way, at the time and in the manner prescribed thereby, which policy of insurance so taken out by defendants being in force and effect at the time of the injury, all of which facts appearing uncontradicted, although none of which being actually known to the plaintiff herein until about April, A. D. 1924, and after the filing of this suit, it is the opinion of the court that such facts constitute a bar to plaintiff's recovery herein."

The evidence showed that if any notice was given it was by posting a notice in the plant owned by the defendants, and operated under the name of the Lone Star Tank Company, at Wichita Falls; the evidence further showed that the defendants were engaged at Wichita Falls in "the tank car business" and in the "pipe line business." W. A. Stuckey testified as follows:

"My name is W. A. Stuckey. I live at Wichita Falls. I have lived in this county since 1919. I am in the tank car business. I was in the pipe line business. Well, I did pipe lining off and on until 1923. My business associate is my son. We are partners in business. We designate our partnership Lone Star Tank Compa-

ny, W. A. Stuckey & Son. Some time we do business under both names. But it is the same parties. What one concern is interested in, the other is in the same way. I know the plaintiff in this case—Mr. Holland. The first time I saw him was some time in May, 1923. I do not remember just the date. I could not say whether it was one day or three days before his injury. It was before his injury. He was working out there on the job at that time. I was supervising the job in a way, would go to the job and leave it again. I did not pretend to stay there all the time. Some days I would stay one-half a day up and down the line. Other days I would not spend over an hour or so, maybe only a few minutes. My son was never out there. He was looking after the tank car business.

"At the time Mr. Holland was injured they were doing pipe line work. I mean the general job. I could not tell you just what they were doing at that time. The general job was putting in a four-inch line. The ditch had already been dug, and it was the pipe crew that was working. I' was not there on the job at the time this injury occurred to Mr. Holland. * * *

"At the time we took out the policy of insurance the agent gave us instructions about posting the notices. And we posted the notices at our principal place of business, according to his instructions. Our principal place of business at that time was on the old Burkburnett road, about two miles north of Wichita Falls. We did not have any other place of business in the county at that time. We placed these notices in conspicuous places around our place of business there. We did that directly after we took out the policy of insurance. We placed those notices on the posts of the building, the full length of the building, one on each post. Those notices were substantially the same as the one you have there, I think."

The evidence is uncontradicted that plaintiff was hired to do this work in the town of Electra, and that he did not know that W. A. Stuckey & Son had any other business, or were operating under the name of Lone Star Tank Company; that the work of laying the pipe line at the time plaintiff was injured was being done about 4 miles south of Electra and about 30 miles from Wichita Falls. The evidence further shows as the plaintiff testified:

"If W. A. Stuckey & Son had been carrying insurance on their employees at the time I was injured and had notified me of that fact, I would have certainly attempted to get the insurance. * * * They never gave me any statement about the insurance. Mr. W. A. Stuckey told me that they did not have insurance. I found out that they claimed to have insurance, but he told me out of his own mouth that he did not have it. Mr. Stuckey said, 'I haven't got it.' I learned that the defendants claimed to have insurance when you filed the pleadings in this case stating it. Yes sir; that was the first time that I ever learned they claimed insurance. No sir; after I learned that Mr. Stuckey claimed to have had insurance I never took any steps towards getting it. My lawyer told me that the defendants were setting up a claim that they had insurance on their men, but Mr. Stuck-

ey told me, setting out here in his car the first time we were down here for trial, that he did not have insurance—that he did not have it. He said that if his girl had signed papers and sent them in he would have had it, but it was his fault that this was not done. Yes; I have found out that they did claim insurance, and I have not done anything about it."

The plaintiff, in his reply to defendants' answer, which reply was filed October 20, 1924, more than 17 months after the claimed injury had been received, pleaded that the defendants failed to give him notice, either written or otherwise, that they carried such insurance at the time he was employed by them, or any time previous to the time of the injury to him, and failed to notify him that they carried such insurance after said injury until the suit was filed, and the time for filing the claim for compensation under said Employers' Liability Act with the Industrial Accident Board had passed, and did not notify plaintiff that they had insurance until more than six months after said insurance and compensation, if any there was, would have accrued to plaintiff; that the defendants failed to report plaintiff's injury to the Industrial Accident Board of Texas, and the same was never reported; that defendants well knew that plaintiff had been injured and that he believed that defendants did not carry insurance under said act for the protection of said employees, and that he would lose his legal right to receive such compensation as is provided under said law, and that they permitted plaintiff to continue to believe that they carried no insurance until after the six months had elapsed for presenting the claim to the Industrial Accident Board.

[1] It will be noted that the pleadings in the way of estoppel do not specifically say that either defendant informed plaintiff that they had no life insurance. It is by reason of this omission that we hesitate to rule that the plea of estoppel is good. But we are of the opinion that no such notice as is contemplated by the amendment to the Workmen's Compensation Act of 1917 was given in this case. The 1913 Workmen's Compensation Act provides that:

"Every subscriber shall, as soon as he secures a policy give notice, in writing or print, to all persons under contract of hire with him, that he has provided for payment of compensation for injuries with the association." Vernon's Sayles' Ann. Civ. St. 1914, art. 5246x.

Under this statute the San Antonio Court of Civil Appeals in Kampmann v. Cross, 194 S. W. 437, in an opinion by Chief Justice Fly, held that the mere posting of a notice in a place of business that the employer is a subscriber under the Workmen's Compensation Act is not as a matter of law notice to the employees, but it is a question of fact whether it was sufficient. A writ of error was refused, and the case was later approved gen-

erally by the Commission of Appeals in the case of Poe v. Continental Oil & Cotton Co., 231 S. W. 717, though this question was not specifically discussed.

The case of Producers' Oil Co. v. Daniels, 244 S. W. 117, 112 Tex. 45, on certified questions from this court, held, under the 1913 statute, that "in order to relieve the employer of liability notice must be given to employé personally."

In Poe v. Continental Oil & Cotton Co., supra, it was held that the employee could sue for damages under the common law where he had not been notified personally, in the absence of waiver of notice. This was decided under the act of 1913. See Batson-Milholme Co. v. Faulk (Tex. Civ. App.) 209 S. W. 837.

Article 5246–77, Vernon's Ann. Civ. St. 1918 Supp. (Act 1917, § 19, pt. 3), reads:

"Every subscriber shall, as soon as he secures a policy, give notice in writing or print, or in such manner or way' as may be directed or approved by the board, to all persons under contract of hire with him that he has provided for payment of compensation for injuries with the association."

The defendants introduced a certified copy of the rules as to notice to the employees made by the Industrial Accident Board, and so far as is here necessary such rule reads:

#### "Notice—Direction No. 1.

"It is hereby directed by the Industrial Accident Board, of the state of Texas that every subscriber to the Employers' Liability Act shall, as soon as he secures a policy, give notice to all persons under contract of hire with him, and to all persons with whom he is about to enter into a contract of hire, that he has provided for payment of compensation provided for by the Texas Employers' Liability Act. Such notice may be given by conspicuously posting in one or more places at said subscriber's principal place of business, a notice printed in bold face type 48 point or larger, reading as follows:

#### "Notice to Employees.

"This will give you notice that I (or we) have provided for the payment of compensation to my (or our) injured employees under Employers' Liability Act, chapter 179, General Laws, Thirty-Third Legislature, and all amendments thereto by insuring with (here give name of insurance company).

"————————————, Employer.

"Dated —— day of ——, A. D. 1917.

"The form of notice above prescribed, nor the character of form of any other notice directed or prescribed by the Board, shall not be held to be exclusive."

It will be noted that the defendants claimed that no liability existed by reason of the fact that they had posted in their place of business at Wichita Falls this notice. They did not say that notice had been "printed in bold face type, 48 point or larger," and it evidently was incumbent on one relying on exemption by reason of such notice having been posted in their principal place of busi-

ness to show that the statute had been substantially complied with.

[2] But we are of the opinion that the posting of the notice in a plant owned by two men, who are sued here as partners, and operated under a designated name, in which the names of the defendants here did not appear, and doing business of a different kind, and at a place more than 30 miles away from where the accident occurred, and inasmuch as it appears from the uncontradicted evidence that plaintiff did not know that defendants had any liability insurance, and did not know that defendants owned or operated a plant at that or at any other place, that such notice is not sufficient to deprive the plaintiff of his common-law right to sue for damages. One of the purposes of the law is to give an employee offering to work for an employer who is a subscriber an opportunity to determine whether or not such employee will rely, in case of accident, on the damages awarded under the Workmen's Compensation Act, or whether he desires to retain his common-law right to sue for damages. We do not think that one doing a business of a particular kind at one place, and posting notices in his plant, informing his employees that he is a subscriber and has insurance to compensate such employee under the act in question, can carry on another business of a different kind, and under a different name, at a distant place, and employ laborers, and never inform such employees of the fact that he has insurance under the act, may exempt himself from liability by reason of the posting of the notices in such distant plant.

[3] We confess that the counsel for appellant and appellee had not cited us to any authorities directly in point, and we have found none, but we think the purpose of the act was to compensate labor employed in certain industries for accidents occurring to them, without reference to whether they were guilty of contributory negligence or not or assumed risk, etc., and further, on behalf of the employer, to limit the recovery therefor to certain prescribed amounts; that in order for the employer and employee both to be bound under the law, there must be a mutual agreement, with full notice on the part of the employer, either actual or constructive, of the fact that the employer is a subscriber under the act, and that if the employee shall be injured he thereby waives his common-law right to sue for damages, and relies on his right to recover compensation under the act.

[4] We do not think that, under the facts shown, the defendants should be held to have given notice, either actual or constructive, to plaintiff of the fact that they were subscribers. The evidence shows that in payment for the labor done in laying the pipe near Electra they gave checks signed by W. A. Stuckey & Son.

We believe, under the undisputed facts and under the findings of the jury, that judgment should have been rendered for plaintiff below, and it is accordingly ordered that the judgment below be reversed and the judgment be here rendered for plaintiff in the sum of $3,500, with costs of suit and with interest at 6 per cent. from date of judgment, and costs of appeal be adjudged against appellees.