Deborah FERGUSON, Kathleen Rabjohns, and Michael Rabjohns, Plaintiffs-Appellees,

v.

HOSPITAL CORPORATION INTERNATIONAL, LTD., Defendant-Appellant.

No. 84–2455.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1985.

E.D. Vickery, John M. Elsley, Houston, Tex., for defendant-appellant.

W. James Kronzer, Houston, Tex., Judson Francis, Dallas, Tex., Richard Harrison, Sherman, Tex., for plaintiffs-appellees.

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Two nurses who were injured while on assignment in Saudi Arabia brought this negligence action against their employer. The employer argues that the Texas Workers' Compensation Act (the "Act") is the nurses' exclusive remedy. Prior to the accident, the employer failed to comply with any of the notice provisions of the Act. The district court denied summary judgment for the employer on grounds that the employer was not a subscriber under the Act because of failure to provide notice of compensation coverage to the employees prior to their accident.

## I. FACTS

Hospital Corporation International, Ltd. ("HCI"), a subcontractor of the Morrison-Knudsen Saudia Arabia consortium, was operating medical facilities at the Khalid Military City Project in Saudi Arabia. HCI was in need of several nurses to work at the medical facilities for short periods of time on temporary assignments. HCI contacted nurses in the United States at hospitals of the Hospital Corporation of America ("HCA").[1] Deborah Ferguson and Kathleen Rabjohns, nurses at the Plano General Hospital in Plano, Texas, agreed to take temporary assignments in Saudi Arabia for HCI. Ferguson and Rabjohns worked under a visa in Saudi Arabia for the term of their assignments. On July 5, 1980, while being driven from the Military City to the airport to return to the United States, the nurses were injured in an automobile accident.[2]

1. There is some dispute as to whether HCA is HCI's parent corporation, an issue that we need not resolve for purposes of this appeal.

2. Also injured in the same accident were Dana Adibi and Jane Semler. Adibi filed a common law damage action against HCI in the Northern District of Texas in which the court granted summary judgment for HCI on the issue of the exclusivity of the Texas Workers' Compensation Act. Ruling on a similar issue was stayed in the Semler case pending resolution of HCI's appeal in this action.

Following their accident, and prior to filing their common law damages actions, Ferguson and Rabjohns filed claims for compensation with the Texas Industrial Accident Board (the "Board") on January 2, 1981. They were subsequently paid some compensation benefits under a policy held by HCI. At approximately the time of filing their claims with the Board, both Ferguson and Rabjohns received oral and written notice that HCI had provided for payment of compensation benefits for injuries which they had sustained in Saudi Arabia.

In October 1981, the nurses separately filed common law actions for damages. In each of these cases, HCI filed a Rule 12(b)(6) motion to dismiss on the ground that it was a subscriber under the Act and that Ferguson and Rabjohns therefore had no right of action at common law. The two actions were later consolidated by order of the district court. The 12(b)(6) motion was considered as one for summary judgment pursuant to Fed.R.Civ.Pro. 12(c).

The district court made the following findings: (1) HCI was not a "subscriber" under the Act by virtue of its failure to provide plaintiffs with pre-injury notice of its compensation coverage, (2) Ferguson and Rabjohns did not waive their right to common law damages by failure to notify HCI of that intent within five days of HCI's notice to them that HCI had compensation coverage; and (3) the fact that the plaintiffs accepted some payments from HCI did not constitute an election of remedies. For these reasons, the court concluded that workers' compensation was not plaintiffs' exclusive remedy and that they could proceed with their common law damages action.[3] The district court certified the denial of summary judgment for the defendant to this Court for immediate appeal by order of May 23, 1984, finding pursuant to 28 U.S.C. § 1292(b) that there existed a controlling question of law as to which there was substantial ground for difference of opinion.

## II. HCI'S FAILURE TO PROVIDE PRE-INJURY NOTICE

We face an issue which is unsettled under Texas law. We must decide what effect the failure of an employer to provide notice in compliance with the Workers' Compensation Act has upon an employer's right to claim immunity from personal injury liability. Although the Act prescribes certain notice requirements, the statute is silent as to the effect the failure to provide notice has upon an employee's common law action for damages.

Under the Act, an employer must provide employees with notice that the employer has provided for payment of compensation for their injuries. Tex.Civ.Stat.Ann. art. 8308 §§ 19, 20 (Vernon 1967). Additionally, an employer's compensation insurer is required to notify the Industrial Accident Board that the insurer has provided compensation coverage for the employer. Tex. Civ.Stat.Ann. art. 8308 § 18a(a). Finally, the filing of notice with the Board constitutes constructive notice to the employees for purposes of satisfying art. 8308 §§ 19,

---

**3.** The district court also concluded that the two insurance policies at issue here did not constitute valid workers' compensation policies under the Act. As to the Ideal Mutual policy held by HCA, HCI's associated corporation, the court found that the activities in Saudi Arabia did not come under the coverage of the policy because the policy specifically listed some ninety workplaces covered in the United States, and made no mention of any foreign sites. Furthermore, the Ideal Mutual policy made no mention of HCI as an insured, although the policy enumerated specific entities that were covered under it.

With respect to the National Union policy, HCI was named as an insured, and the policy did provide for foreign workers' compensation coverage. However, the court focused on the voluntary nature of the policy, and concluded that HCI retained too much control over the conditions of payment to qualify the policy under the Act. The court noted that although the decision to provide workers' compensation is voluntary with an employer, once the employer has become a subscriber under the Act, the payment of compensation can no longer be voluntary or conditional, as it was under the National Union Policy. It is not necessary to reach the issue of the validity of the policies under the Act because we conclude on a more narrow ground that HCI was not a subscriber under the Act.

20. Tex.Civ.Stat.Ann. art. 8306 § 3(c). None of these three notice requirements had been met prior to the time the appellees filed their claims with the Board.[4]

HCI alleges that the failure to provide proper notices under these provisions was mere inadvertance, and that the appellees seek to take advantage of HCI's technical failure to comply with the notice requirements. HCI argues that in any event, such failure to provide notice does not affect its right to claim the benefit of the Act's exclusive remedy. On the other hand, appellees contend that the failure to provide proper notice was intentional, and that HCI sought by failing to comply with the Act to preserve the voluntary nature of its insurance policy separate from the requirements of the Act.

We emphasize, however, that whether HCI's failure to provide notice was intentional or inadvertent is not the relevant inquiry here. Instead, our focus in considering lack of notice is upon the purpose served by requiring that such notice be provided, and not a subjective probing into the reasons why HCI did not comply with the notice provisions.

To understand the significance of the notice provisions in the Act, we refer first to the initial enactment of the workers' compensation scheme in Texas in 1913.[5] Adopting a system of compensation for injured employees without reference to fault was at that time a revolutionary concept. But the relinquishment of the long prevailing right to common law damages was accepted as a legitimate sacrifice for ensuring that all injured employees would be compensated.

The enactment of the workers' compensation law initially raised concerns about the possible constitutional implications of denying an injured worker the previously available common law damages remedy. Shortly after enactment of the Act, an employee of Texas Power & Light Co., Charlie Middleton, was injured, and brought an action for common law damages. Middleton refused to accept compensation under his employer's compensation policy, challenging the constitutionality of the Act on grounds that the denial of a common law action for damages was a deprivation of property without due process of law, in violation of the Fourteenth Amendment. When the Texas Supreme Court upheld the constitutionality of the Act in *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (Tex.1916), Middleton took his claim to the United States Supreme Court.

In 1917, before the Supreme Court decided Middleton's case, the Texas legislature enacted amendments to the Act which evidenced its continued concern with the constitutionality of the workers' compensation scheme. First, the 1917 amendments provided that employers were to give notice in writing to their employees that the employers were subscribers under the Act. Tex. Civ.Stat.Ann. art. 8308 §§ 19, 20. Courts construed this requirement strictly, holding that employees had to be given *actual* notice of their employer's subscriber status in order for notice to be effective. *Bailey v. Texas Indemnity Ins. Co.*, 14 S.W.2d 798, 801 (Tex.Comm.App.1929); *Producer's Oil Co. v. Daniels*, 112 Tex. 45, 244 S.W. 117 (Tex.Comm.App.1922). *George W. Armstrong Co. v. Adair*, 112 Tex. 439, 247 S.W. 848, 852 (Tex.Comm.App.1923). The 1917 amendments also allowed an employee the opportunity to retain his rights to common law damages if he notified his employer of that intention within five days of receiving the employer's actual notice of an existing compensation plan. Tex.Civ.Stat.Ann. art. 8306 § 3a. By enacting stringent notice requirements and preserving the employee's option to retain a common law right of action, the Texas legislature made clear its intention to provide all assurances that the workers' compensation scheme would not abridge employees' constitutional rights.

---

**4.** The effect of post-injury notice is discussed separately, *infra*, 769 F.2d at 273.

**5.** 1913 Tex.Gen.Laws, ch. 179, originally codified in Tex.Rev.Stat. arts. 5246h–5246zzzz (Vernon 1914).

Prior and subsequent to these amendments, several courts addressed the question of failure to provide employees with notice, specifically holding that such failure vitiated the employer's subscriber status. The seminal case was *Kampmann v. Cross*, 194 S.W. 437 (Tex.Civ.App.—San Antonio, 1917 writ ref'd). *Kampmann* characterized the relationship among employer, employee and insurer as a contractual one whereby the parties became bound under the Act through mutual acceptance of the compensation scheme. *Kampmann* reasoned that acceptance hinged on proper notice, and that an employee without proper notice of the employer's compensation plan could not be deemed to have accepted workers' compensation in lieu of any common law right to damages. Therefore, an employer who failed to provide an employee with proper notice was not a subscriber under the Act. This rationale was accepted by all courts that subsequently considered the notice issue. *See, e.g., Farmers' Petroleum Co. v. Shelton*, 202 S.W. 194 (Tex. Civ.App.—Beaumont, 1918 writ ref'd); *Holland v. Stuckey*, 282 S.W. 951 (Tex.Civ. App.—Fort Worth, 1926 writ ref'd); *Rice v. Garrett*, 194 S.W. 667 (Tex.Civ.App.— Amarillo, 1917 writ ref'd). *Bailey v. Texas Indemnity Insurance Co.*, 14 S.W.2d 798 (Tex.Comm.App.1929).[6]

In 1919, the fear that the workers' compensation scheme might infringe on employees' constitutional rights was put to rest when the United States Supreme Court decided that Middleton's Fourteenth Amendment rights had not been violated by the Texas Act in its original form. *Middleton v. Texas Power & Light Co.*, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919). The Court held that individuals had no right to unchanging law, and that no vested right existed in common law remedies. With this concern now addressed, the legislature was free to relax its notice requirement to employees, one of which had proved particularly burdensome on employers. By amendment of 1923, notice to the Industrial Accident Board was deemed constructive notice to employees, thus dispensing with the requirement of actual notice to employees. Tex.Civ.Stat.Ann. art. 8306, § 3c. Because this burden of notice had been drastically reduced from actual notice to all employees to one single filing of notice with the Board, the 1923 amendment brought to a halt litigation involving the issue of proper notice to employees.[7]

Enactment of the 1923 amendment marked a shift in the legislature's focus on notice requirements under the Act away from notice to employees and toward notice to the state. The enactment of art. 8306 § 3c, which deems notice to all employees accomplished by constructive notice through a single filing with the Board, created considerable incentive for the employer claiming subscriber status to notify the state of that intent. So great was this incentive, and so simple was the notice required to comply with this provision, that we have found no cases raising the lack of notice under the Act since enactment of the 1923 constructive notice amendment.

---

6. HCI contends that at least one court specifically rejected the conclusion reached in *Kampmann*. *See Batson-Milholme Co. v. Faulk*, 209 S.W. 837 (Tex.Civ.App.—Galveston 1918, writ ref'd). In fact, the *Batson-Milholme* court reached the same conclusion as in *Kampmann* using a different rationale. As we have pointed out, the Texas Workers' Compensation Act was amended in 1917 to allow an employee to retain his common law right to recovery in the event of injury by providing his employer with notice of that intent. Failure to provide an employer with such notice constituted a waiver of any common law right to damages in a later injury. The court in *Batson-Milholme* concluded that only with the addition of this amendment did the legislature make clear its intention that an

employee retained his common law right until he received notice that his employer was a subscriber under the Act. Therefore, the holding in *Batson-Milholme* is actually in accord with *Kampmann*, although the *Batson-Milholme* court felt that the *Kampmann* court was premature in reaching its conclusion.

7. Since then, the legislature has broadened the requirement of notice to the State under the Act. By amendment of 1967, the employer's compensation insurer is also required to notify the Board immediately that the employer has procured a workers' compensation policy with it. Tex.Civ.Stat.Ann. art. 8306 § 18a(a).

HCI urges that failure to comply with any of the notice provisions of the Workers' Compensation Act should have no effect on its subscriber status. In view of the history and purpose of notice requirements under the Act, we cannot agree. Because the workers' compensation scheme remains voluntary in Texas, an employer's notice to the state is critical to determine whether an employer had the intention to be a subscriber under the Act. We have pointed out in tracing the history of the notice requirements that while the Act virtually dispenses with notice to employees of subscriber status, notice to the State via filing with the Board has remained a critical factor in determining whether an employer intended to be a subscriber under the Act. The simple act of filing notice with the Board is a clear manifestation of this intention under the Act. Without notice, the state, injured employees, and the courts should not be compelled to second-guess the employer as to his true intention.

We conclude that the district court correctly found that HCI's failure to comply with any of the notice provisions bars it from claiming subscriber status under the Act. Stripped of subscriber status, HCI cannot successfully assert that appellees'

remedies are limited to the exclusive remedy of workers' compensation.[8]

### III. THE EFFECT OF HCI'S POST–INJURY NOTICE [9]

HCI urges that even if it was not a subscriber at the time Ferguson and Rabjohns sustained injuries, appellees waived any right to common law damages pursuant to Tex.Civ.Stat.Ann. art. 8306 § 3a. Ferguson and Rabjohns were injured on July 5, 1980. HCI did, in fact, notify appellees of their asserted compensation coverage on January 2, 1981. Appellees did not file their common law claims for damages until October 1981. HCI argues that appellees' failure to notify HCI of their intention to retain the common law right to damages within five days of HCI's January 2 notice constituted a waiver of such rights. Therefore, we must address the issue of whether art. 8306 § 3a waiver is operative where the employer provided post-injury notice. We find no controlling Texas cases on this issue as well.

Article 8306 § 3a provides:

An employee of a subscriber shall be held to have waived his right of action at common law or under any statute of this State to recover damages for injuries sustained in the course of his employ-

---

8. HCI argues that it was qualified as a subscriber under the definition of that term in Tex.Civ. Stat.Ann. art. 8309 § 1 (Vernon 1967) and that qualification under the definition is conclusive proof of its subscriber status. Under the Texas Workers' Compensation Act, a "subscriber" is:

> ... any employer who has become a member of the association [Texas Employers' Insurance Association] by paying the required premium ... or other insurance company authorized under this Act to insure the payment of compensation to injured employees.

HCI contends that *Consolidated Underwriters v. King*, 160 Tex. 18, 325 S.W.2d 127, 129 (Tex.), *cert. denied*, 361 U.S. 198, 80 S.Ct. 295, 4 L.Ed.2d 238 (1959), conclusively decided this contention in its favor. We disagree with HCI's contention that *King* is controlling in this case. The issue in *King* was whether a Louisiana employee working in Texas for a Louisiana corporation could recover under the Texas Workers' Compensation Act although his employer's compensation policy specifically limited his recovery to those remedies available under Louisiana Compensation Law. The Louisiana employer had never

attempted to become a subscriber under the Texas Act. Because the decision to become a subscriber is elective with the employer, the court held that the employer had no obligations under the Texas Act and that the employee was limited to the rights existing under the Louisiana policy. The only mention in *King* of any kind of notice was in a footnote where the court stated, "Art. 8308, Sec. 18a, V.A.T.S., also requires a subscriber to give certain notice, but an analysis of that provision is not necessary to a determination of the question before us." *Id.* 325 S.W.2d at 129 n. 2.

9. The only notice appearing clearly in the record as having been given to the Texas Industrial Accident Board was a letter from the Ideal Mutual Insurance Company notifying the board that HCA, not HCI, had a compensation policy with that company. That letter was sent over seven months after the accident. As pointed out earlier, that policy excluded any injuries in the Saudi Arabian locale and was a policy issued to a company other than the employer of the injured nurses.

ment if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claimed said right or if the contract of hire was made before the employer became a subscriber, if the employee shall not have given the said notice within five days of notice of such subscription.

The Compensation Act is silent as to the effect of post-injury notice on § 3a employee waiver. The district court held that such notice could not cure an employer's non-compliance with the notice provisions of the Workers' Compensation Act prior to the time of injury. The district court reasoned that an employer could not remain silent about its compensation coverage until after it was able to assess the extent of a workers' injuries. We agree.

We conclude that the Texas legislature did not intend that post-injury notice could cure non-compliance with the notice requirements of the Act. Under the Act, an employer who elects coverage assumes the risk of compensation liability in exchange for the benefit of immunity from civil liability. But one who wishes to bargain for a benefit by assuming a particular risk cannot claim the benefit before having assumed the risk. An employer who does not establish compensation liability prior to injury of an employee cannot be allowed to claim later the exclusivity benefit of the Act once that employee has sustained injury. To hold otherwise would allow an employer after injury to decide if it could likely defeat a common law claim, in which case it could withhold notice. If the employer decided, on the other hand, that it would likely lose at common law, the employer could bar the employee's claim by providing notice of its workers' compensation coverage. Having previously determined that HCI is not a subscriber by virtue of its failure to provide the State with notice of its intent to assume the risk of compensation liability, we hold that HCI cannot claim the benefit of immunity from civil liability subsequent to appellees' accident.

HCI cites one Texas case for the asserted proposition that post-injury notice is valid notice for purposes of triggering the § 3a waiver. *See Bailey v. Texas Indemnity Insurance Co.*, 14 S.W.2d 798 (Tex. Comm.App.1929). The issue in that case, however, was quite distinct from the one before us. In *Bailey*, the court considered the effect of post-injury notice on an employee's right to file a compensation claim beyond the statutory deadline. The plaintiff in *Bailey* did not file a claim with the Board until two years and eight months after his injury, although he was required by the Act to file within six months of injury. The reason for his delayed filing was that his employer had never provided him with actual notice (as required under pre-1923 law) that compensation coverage was available to him. The court held that the injured workers' compensation claim was preserved until proper notice had been provided by the employer, even though the statutory period for filing such a claim had expired.

*Bailey* is inapposite to the facts of our case in two respects. First, *Bailey* raised the issue of the preservation of a compensation claim beyond the statutory deadline for filing, and did not concern a situation where an employee sought to preserve a common law right of action. More significant, the injured employee in *Bailey* filed his claim with the Board immediately upon receiving notice from his employer of his compensation coverage. For this reason, *Bailey* provides no guidance as to whether the failure of an employee to notify of his intent to retain a common law action within five days of receiving the employer's notice results in waiver of the right to the action common law under § 3a.

HCI's post-injury notice cannot now be the basis for depriving appellees of their action for common law damages.

## IV. ELECTION OF REMEDIES

■ For several months after they sustained injuries, Ferguson and Rabjohns accepted payments for hospital, doctor, and nursing services under HCI's compensation

plan. HCI contends that such acceptance of benefits was inconsistent with any attempt to assert a common law right of action, and therefore constituted an election of remedies, barring any negligence claim.

*Grimes v. Jalco, Inc.,* 630 S.W.2d 282, 285 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), held that filing a claim and accepting compensation benefits did not constitute an election of remedies where no final judgment had been entered with respect to the compensation claim. In *Grimes,* an injured employee who had accepted compensation payments for twenty-eight weeks, appealed a Board award but no final order had been entered. The injured employee sought on appeal to preserve the option of proceeding with a common law negligence claim against the defendant in the event the court decided that he was an independent contractor rather than an employee of the defendant. The Court held that no election of remedies was made until a final judgment was entered on his compensation claim.

HCI cites *Heibel v. Bermann,* 407 S.W.2d 945 (Tex.Civ.App.—Houston [1st Dist.] 1966, no writ), for the proposition that the appellees did elect a remedy. However, that case is clearly distinguishable in that a final judgment and settlement was rendered in *Heibel* before the plaintiff filed a common law claim. In fact, final judgments had been rendered in all other workers' compensation cases where

Texas courts have held that an election of remedies had been made.[10] *See,* for example, *Porter v. Downing,* 578 S.W.2d 460, 461 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). *Moore v. Means,* 549 S.W.2d 417 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). *Hedgeman v. Berwind Railway Service Co.,* 512 S.W.2d 827 (Tex.Civ. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.), *LeJeune v. Gulf States Utilities Co.,* 410 S.W.2d 44 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.).

No final judgment by the Board was rendered here on appellees' compensation claims. Appellees have not, therefore, elected workers' compensation benefits and thus have not barred an action for common law damages.

## V. CONCLUSION

Because of its failure to comply with any of the notice provisions of the Act, HCI was not a subscriber under the Texas Workers' Compensation Act. HCI failed to notify the State of its intent to become a subscriber under the Act via a simple filing with the Board. Consequently, it cannot now claim the exclusivity benefit of workers' compensation. For any notice to appellees to have been effective, such notice would have to have been given to the Board prior to the time appellees sustained their injuries.[11] Finally, the fact that the appellees accepted some compensation payments from HCI did not constitute an elec-

**10.** A possible exception is *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933 (Tex.1983), where the Court held that the collection of workers' benefits by an employee who subsequently alleged his injury was by intentional tort constituted an election of remedies and estopped the employee from proceeding to recover damages outside the Act. This language, however, must be viewed in the context of the unusual circumstances of that case, and does not affect the holding in *Grimes.* In *Massey,* the injured worker received an award from the Board that was then appealed by his employer's insurer. The injured worker answered the appeal with a counterclaim for intentional tort based on the alleged interference of his employer's insurer with the workers' contract rights. Although no final judgment had been reached by the Board, the damages claimed at common law were unrelated to the

employee's injuries that formed the basis of his compensation claim. *Massey* therefore is not controlling in this action, which involved a negligence claim arising directly out of the appellees' work-related injuries. We also note that *Massey* cites *Porter v. Downing,* 578 S.W.2d 460, 461 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.), as correctly stating the law on election of remedies, a case in which final judgment had been entered at the time the injured worker sought to bring a claim for intentional tort against two co-workers.

**11.** The facts in this case do not call upon us to decide whether lacking notice to the Board pre-injury notice to employees of workers' compensation insurance would suffice to bar common law suit for later injury.

tion of remedies because no final judgment was ever entered with respect to their compensation claims. The district court properly denied HCI's motion for summary judgment, and appellees may proceed with their common law action for damages. The decision of the district court should be affirmed in all respects.

AFFIRMED.