**TEXAS INDUSTRIAL CONTRAC-
TORS, INC., and Bayer,
Corp., Appellants,**

v.

**Richard J. AMMEAN, Appellee.**

**No. 09–98–073CV.**

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 23, 1999.

Decided April 6, 2000.

R. Brent Cooper, Michelle E. Robberson, Cooper & Scully, P.C., Dallas, Hollis Horton, Orgain, Bell & Tucker, LLP, Beaumont, for appellants.

Mike Jacobellis, Tonahill, Hile, Leister & Jacobellis, Beaumont, for appellee.

Before BURGESS, STOVER and HILL,*JJ.

## OPINION

JOHN HILL, Justice (Assigned).

Texas Industrial Contractors, Inc., (Texas Contractors) and Bayer Corporation, successor to Miles, Inc., Polysar Rubber Division, (Bayer) appeal from a judgment in favor of Richard J. Ammean based upon his allegations that he suffered a back injury at his place of employment. Texas Contractors presents thirteen issues on appeal, while Bayer presents five issues on appeal. We reverse Ammean's judgment against Texas Contractors and render judgment he take nothing because his claim is barred by the exclusive remedy provision of the Texas Workers' Compensation Act. We affirm his judgment against

---

* The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1998).

Bayer for the reasons set forth in this opinion.

Ammean, at the time of the alleged injury, had been hired by Texas Contractors, a firm that was under contract with Bayer to act as an independent contractor doing work on Bayer premises. There was testimony at trial that Ammean injured his back when another such worker bumped the end pallet of a group of pallets upon which Ammean was working, causing Ammean to lose his balance. Subsequently, Ammean sought and obtained workers' compensation benefits through Texas Contractors' insurance carrier.

Texas Contractors urges in issues numbers one through four that Ammean was precluded from recovering against it because of the exclusive remedy provision of the Texas Workers Compensation Act, in view of Ammean's application for and receipt of compensation benefits from its workers' compensation insurance carrier.

█ It is undisputed that Ammean applied for workers' compensation benefits and has received benefits from Texas Contractors' insurance carrier, following an award of the Texas Workers' Compensation Commission. Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee. TEX. LAB.CODE ANN. § 408.001 (Vernon 1996). Consequently, Ammean has no right of recovery for common law damages against Texas Contractors.

█ Ammean argues the exclusive remedy provision does not prevent him from recovering against Texas Contractors at common law because Bayer was his true employer since it controlled the details of his work and because he did not make an informed election of remedies. Where, however, a worker is hired by one company that has contracted to do work for another, that company has a workers' compensation policy, and the worker receives benefits under that policy following an award by the Texas Workers' Compensation Commission, the worker's common law claim against that company is barred by the Act's exclusive remedy provision, even if control over the details of the work is in the hands of the other company with which that company has contracted. *See Chapa v. Koch Refining Co.*, 985 S.W.2d 158, 161 (Tex.App.—Corpus Christi 1998), *rev'd on other grounds*, 11 S.W.3d 153 (Tex.1999).

Ammean relies principally upon the case of *Ferguson v. Hospital Corp. Int'l, Ltd.*, 769 F.2d 268 (5th Cir 1985). We find that case to be distinguishable. In *Ferguson*, two nurses were in an automobile accident in Saudi Arabia. *Id.* at 269. They filed workers' compensation claims against their employer. *Id.* at 270. At about the same time they filed their claims, their employer, for the first time, gave oral and written notice that it had provided for payment of compensation benefits for the injuries they had sustained. *Id.* The Court held the employer's failure to give an earlier notice that it had provided workers' compensation coverage meant it was not a subscriber under the Act. *Id.* at 273. In view of that, the court held the employer could not assert that the nurses' remedy was limited to the exclusive remedy of workers' compensation. *Id.* The court held the nurses did not waive their common law claim by failing to notify their employer, within five days of receiving its post-accident notice, of their intention to retain the right to bring a common law claim. *Id.* at 274. Finally, the court held the nurses' common law claims were not barred by the exclusive remedy provision because there was no final judgment for compensation. *Id.* at 275. Subsequently, the Texas Supreme Court held that a final resolution of the compensation claim is not always a necessary element of the election of remedies defense. *SeeMedina v. Herrera*, 927 S.W.2d 597, 605 (Tex. 1996). In any event, Ammean brought this common law claim after he had sought and obtained, with the assistance of an attorney, workers' com-

pensation benefits. No appeal was taken from the award. We sustain Texas Contractors' contentions as presented in issues one, two, three, and four. In view of our determination of the contentions presented by these issues, we need not consider the issues presented in Texas Contractors' issues five through thirteen.

Bayer urges in its first issue it is entitled to a rendition of judgment that it is not liable to Ammean on the basis of negligence because: it owed no legal duty under the express terms of its contracts with Texas Contractors; it owed no legal duty based upon an exercise of actual supervisory control over the injury-causing activity; and it owed no legal duty based upon the borrowed servant doctrine.

The jury found, in response to question four, that Bayer's negligence proximately caused Ammean's injury. The question contained an instruction that in order to find Bayer negligent, the jury must find that it retained part of the control of the work and that it failed to exercise its control of the work with reasonable care. We construe a part of Bayer's argument under this issue as being that there is no evidence to support the jury's finding in answer to question four.

When considering the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the jury's finding, and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there exists probative evidence to support the finding, the point will be overruled and the finding upheld. *See Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

Richard Ammean testified that after he was hired by Texas Contractors, he went to Bayer to work on their premises. His supervisor was Charles Anthony, a Bayer employee.[1] Ammean was assigned to be a bale inspector, someone who checks for contamination in the rubber and picks out all such contamination. He testified that on the occasion in question, Bayer employees shut down the dryer where he was working and told him to go over to help build boxes. Ammean said that if a Bayer employee told him to go build boxes he was required to respond immediately. He testified that prior to the accident he did not know Charles Dumas, the leaderman at Bayer for Texas Contractors, and the leaderman was not present when he was doing his work. Part of the process of building boxes was gluing them. In order to glue the boxes, Ammean got a bucket of glue and the glue stick and spread the glue on top of the pallets, one at a time, as Richard Barfield slid the boxes up on the pallet.

Petitioner's exhibit two was introduced. It is a document produced by Bayer that shows, with respect to building boxes, the materials required, the steps to go through to perform the work, and other things. Willie Lassien, another employee who was working with Ammean, testified he also considered Charles Anthony to be his foreman. Charles Anthony testified he was a supervisor and that Ammean worked under him. He had authority to tell Ammean and others working under him when they could take their breaks. He also indicated Bayer provided all of the tools and equipment that Ammean and the others were using. Max Stevens testified he works for Bayer. He indicated Bayer trained forklift drivers, including John Barnett, the forklift driver who bumped the pallet upon which Ammean was standing. Stevens stated Barnett took the training twice, once in 1992 and once in 1994. He said that Bayer had the right to tell the forklift operators not to bump the pallets with people standing on them. Barnett said his supervisor when driving the forklift was a Bayer employee and that Bayer left it to his discretion as to whether to bump the pallets when someone was standing on them. We find the evidence is sufficient to support the jury's answer to question four.

1. At the time it was called Miles Polysar Rubber Division.

Bayer insists the evidence is insufficient because Ammean presented no evidence Bayer exercised actual control over the box-building activities of Texas Contractors' employees or that they were borrowed servants in connection with the injury-causing activities. We hold that from the evidence outlined above, a reasonable jury could conclude Bayer did exercise actual control over the box-building activities of the Texas Contractor employees, including the activities of the forklift driver.

Bayer takes the position that when all of the evidence is considered, it either establishes that as a matter of law it did not exercise control, or that the jury's finding it did exercise control is factually insufficient. Bayer reserved no right of control under its contract with Texas Contractors. Ammean testified that after filling out a job application with Texas Contractors, he underwent training on general on-the-job safety arranged for by Texas Contractors. When asked if Texas Contractors provided him with personal safety equipment, Ammean said, "No, ... [t]hey gave them to me at the guard shack. Goggles and ... ear protection." Evidence was presented that Texas Contractors paid Ammean. By deposition, Charles Anthony testified that Charles Dumas, Texas Contractors' leaderman, was there to supervise the Texas Contractors' employees. There was also testimony that an employee of Texas Contractors trained Ammean on how to build the boxes. Ammean indicated he stood on the pallets while applying glue because it was easiest for him and, he said, he was told to do it that way. In his deposition, Charles Anthony denied Ammean and Barnett were under his supervision. He indicated, however, that if he saw someone bumping pallets while another worker was standing on them, he would speak to both of them. Robert Townsend, the senior safety officer for Bayer, testified that Charles Anthony was not a supervisor. He indicated Bayer would not consider it safe for someone to spread glue while walking on the pallets, or to push the pallets with a forklift when someone was standing on them, and that he would say something to someone if he saw them standing on the pallets. There was testimony that an employee of Texas Contractors had trained Barnett in the operation of the forklift. We disagree with Bayer's contention that this evidence establishes as a matter of law Bayer did not exercise control over the activity which caused Ammean's injury.

In reviewing a factual sufficiency point, we must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* Considering all of the evidence, we hold the jury's answer to question four is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Bayer relies in part upon the cases of *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985) and *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354 (Tex.1998). In *Redinger*, the court held when a general contractor exercises some control over a subcontractor's work, the general contractor owes a duty to an employee of the subcontractor to exercise its supervisory control in a reasonable manner. *Redinger*, 689 S.W.2d at 418. We find nothing in *Redinger* that is inconsistent with our opinion in this case. In *Hoechst–Celanese*, the court held there was no evidence Hoechst–Celanese's requirement that tools and implements were to be used in the manner for which they were intended was generally dangerous or unreasonable. *Hoechst–Celanese*, 967 S.W.2d at 358. We likewise find nothing in *Hoechst–Celanese* that is inconsistent with our finding in this case. We overrule Bayer's contentions contained in issue one because probative

evidence supports the jury's finding that it exercised actual supervisory control over the injury-causing activity.

Bayer urges in issues two and three that Ammean waived his right to recover against it because he failed to submit the proper questions to establish its negligence liability, or its vicarious liability, arising out of an allegedly negligent activity and because the trial court failed to properly submit the disputed issue of control.

■ The jury found Bayer was negligent in its own right. It further found that on the occasion in question Barnett, the forklift driver, was acting as Bayer's employee and that Bayer was negligent also for that reason. These questions were accompanied by instructions that the jury could not find Bayer negligent in its own right absent its retention of control and a failure to exercise its control with reasonable care. The jury was instructed it could not find that Barnett was Bayer's borrowed employee unless it found that Bayer or its agents had the right to direct and control the details of the particular work inquired about.

Rule 277 of the Texas Rules of Civil Procedure provides that in all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions and submit such instructions and definitions as shall be proper to enable the jury to render a verdict. Tex.R. Civ. P. 277. We see no error in a case of this nature in submitting the negligence question to the jury, accompanied by an appropriate instruction with respect to the issue of control. Bayer relies upon the case of *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex.1997). We find that case to be distinguishable. In *Olivo*, the Texas Supreme Court held where one employed by an independent contractor is seeking to hold a general contractor liable for defects that exist on the premises when he entered on the premises for business pur-

poses or that are created through some means unrelated to the activity of the injured employee or his employer, a jury charge that does not include the premise defect elements set forth in *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983), cannot support a recovery in a premises defect case. *Id.* at 529. Inasmuch as this is a negligent activity case, not a premises defect case, *Olivo* has no application.

Bayer urges that Ammean did not obtain a finding that he was an employee of Bayer or that his activity was controlled by Bayer at the time of his accident. The jury found that Ammean's injuries were entirely caused by Barnett, the forklift driver, without any negligence on Ammean's part. That being the case, the issue is whether Barnett was Bayer's employee and whether Bayer controlled the details of his work. Ammean did obtain a finding that Barnett was a borrowed employee of Bayer. The jury was instructed with respect to the issue of control.

■ Bayer urges that an instruction included in the jury charge that "a contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but is not controlling" is a comment on the weight of the evidence. The court's instruction is a correct statement of the law. See *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex.1992). We believe that in this situation it clarified the issue for the jury and did not constitute a comment on the weight of the evidence.

Bayer urges that Ammean did not obtain a finding Barnett was negligent. Question No. 7 asked if Bayer was negligent. It included· an instruction that an employer is liable for the negligence of its employees. In Question 6, the jury found Barnett was an employee of Bayer. Given the facts of this case, we hold the jury's "Yes" answer to this question necessarily

included a finding that on the occasion in question Barnett was negligent.

■ Next, Bayer argues that the trial court's instruction in question number four with respect to control is legally incorrect regarding how the issue of control was applied to Bayer. Our record does not reflect that Bayer submitted either a correct instruction with respect to the control issue nor that it objected to the instruction given on the basis that it now asserts. Consequently, its objection to the instruction is waived. TEX. R. CIV. P. 274; *M.L.C. Loan Corp. v. P.K. Foods, Inc.*, 541 S.W.2d 902, 905 (Tex.Civ.App.—Beaumont 1976, no writ).

■ Bayer also asserts there is no evidence to support the jury's answer to question four because there is no evidence, or, alternatively, insufficient evidence, to support the jury's finding that it was negligent. In addition to the evidence that we have already outlined, there was testimony from John Barnett, the forklift driver, that pushing up pallets with the forklift while someone is standing on the pallets is something that happens every day. He indicated that the pallets have to be pushed up or the person making the boxes cannot finish the job. We hold the evidence as we have outlined it is sufficient to support the jury's finding that Bayer was negligent. Considering all of the evidence presented, we hold the jury's finding of negligence on the part of Bayer is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule Bayer's contentions as contained in issues two and three.

■ Bayer urges in issue four the trial court committed reversible error in instructing the jury in question number seven as to Bayer's negligence. Question 7 was submitted as follows:

Do you find from a preponderance of the evidence that Bayer Corporation (Miles, Inc.) was negligent?

You are instructed that an employer is liable for the negligence of its employees.

Answer "Yes" or "No."

Answer: _____

Bayer complains the instruction is legally incorrect because an employer is not always liable for the negligence of its employee and because it is a comment on the weight of the evidence and a directed verdict against Bayer on the issue of Barnett's negligence. Bayer objected to this issue on the basis that as a matter of law it was not Barnett's employer and because Barnett was guilty of horseplay that took him out of the course and scope of his employment. The accompanying instruction to question 6 defined the term employee and also instructed the jury as to when an employee is not acting within the scope of employment. In response to that question, the jury found that Bayer was Barnett's employer. In its answer to that question, then, the jury necessarily found that Bayer was in fact Barnett's employer and that Barnett was not acting outside the course and scope of his employment at the time of the incident in question.

It could be that question 7 should have been conditioned upon an affirmative answer, with respect to Bayer, of question 6. We hold that in view of question 6 with its accompanying instructions, and the jury's answer thereto, any error in including the instruction of which Bayer complains was not such an error as probably caused the rendition of an improper judgment or prevented Bayer from properly presenting its case to the court of appeals. *See* TEX. R.APP. P. 44.1.

■ Bayer also contends Ammean submitted the case as a premises liability case, as opposed to a negligent activity case. Question 4 asked concerning Bayer's negligence as an owner or occupier of the premises and as a general contractor.

The definition portion of the charge defined "negligence" in the standard way as "failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." "Negligence" was also defined, with respect to Bayer's conduct as an owner or occupier of premises, as "failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by an activity that the owner or occupier knows about, or in the exercise of ordinary care, should know about." Bayer's objection to the charge was that there was no evidence of premises liability, not that the charge improperly submitted the issue of a premises liability case based upon negligent activity. We hold error was not preserved because the issue on appeal differs from the objection at trial. See *Weidner v. Sanchez*, 14 S.W.3d 353 (Tex.App.—Houston [14th Dist.] 2000, n.p.h.) (not yet released for publication). Even if the issue was preserved, we hold the additional definition of negligence is sufficiently similar to the standard negligence definition that its inclusion in the charge did not probably cause the rendition of an improper judgment or prevent Bayer from properly presenting its case on appeal.

Bayer relies upon the case of *Keetch v. Kroger Co.*, 845 S.W.2d 262 (Tex.1992). In *Keetch*, the court held that the trial court, in a premises liability case based upon a premises condition, did not err in asking the jury whether the premises owner knew of the condition because the creation of the condition by the owner did not establish, as a matter of law, that the owner had knowledge of the condition. *Id.* at 266. The court also held the plaintiff failed to preserve any error with respect to the use of a broad form question. *Id.* at 267. We find nothing in *Keetch* to be inconsistent with this opinion. We overrule Bayer's contentions as contained in issue four.

▮ Bayer insists in issue five the evidence is legally, or, alternatively, factually insufficient to support an award for future loss of earning capacity. The jury found damages for future loss of earning capacity in the amount of $100,000. In a personal injury suit the amount of a plaintiff's future loss of earning capacity is always uncertain, and must be left largely to the sound judgment and discretion of the jury. See *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). While the jury is given much discretion, it should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. See *Bonney v. San Antonio Transit Co.*, 160 Tex. 11, 325 S.W.2d 117, 121 (1959). The injured party is required to introduce sufficient evidence to enable the jury to reasonably measure earning capacity prior to the injury. See *City of Houston v. Howard*, 786 S.W.2d 391, 395–96 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Ammean was thirty-two years of age at the time of trial. He testified he had earned as much as $11.18 per hour in New Jersey in a heavy lifting job before moving to Texas and starting work for Texas Contractors at the rate of $6.17 per hour. The evidence showed Ammean had surgery after his injury and had permanent restrictions with respect to his employment. His surgeon indicated he should be able to lift in the 30–40 lb. range and would need to have a job with freedom of motion to avoid stiffness in his back. The doctor also indicated he would be better working at or above knee level and at or below shoulder level. There is evidence Ammean was earning more money after the accident than he was before the accident. Finding this is sufficient evidence to enable the jury to reasonably determine Ammean's future loss of earning capacity, we hold the

evidence is both legally and factually sufficient to support the jury's award. We overrule Bayer's contentions as presented in issue five.

The judgment in favor of Richard Ammean as to Texas Industrial Contractors, Inc. is reversed and judgment rendered that Richard Ammean take nothing as to it. The judgment of Richard Ammean as to Bayer Corporation, successor to Miles, Inc., Polysar Rubber Division, is affirmed.

REVERSED AND RENDERED IN PART; AFFIRMED IN PART.