Juanita SIMMONS, Plaintiff,

v.

ATLAS VAC MACHINE COMPANY and American Mutual Ins. Co., Defendants and Third Party Plaintiffs,

v.

MYRO, INC., Third Party Defendant.

Civ. A. No. 78–C–642.

United States District Court, E. D. Wisconsin.

July 31, 1980.

Marjan R. Kmiec, Milwaukee, Wis., for plaintiff.

Robert C. Burrell, Terry E. Johnson, Milwaukee, Wis., for defendants and third party plaintiffs.

David M. Quale, Thomas N. Harrington, Milwaukee, Wis., for third party defendant.

DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a diversity action seeking damages for personal injuries suffered by the plaintiff while operating a machine manufac-

tured by the defendant Atlas Vac Machine Company. Named as a third party defendant is Myro, Inc. ("Myro"), a Wisconsin corporation on whose premises plaintiff was working when the accident occurred. The third party defendant has moved for summary judgment on the ground that all claims against it are barred by the Wisconsin Workmen's Compensation Act. For the reasons stated below, the motion will be granted.

Section 102.03(2) of the Wisconsin Statutes provides that:

" * * * [T]he right to the recovery of compensation under this chapter [the Workmen's Compensation Act] shall be the exclusive remedy against the employer * * * "

The question before the court is whether Myro was the plaintiff's "employer" within the meaning of the Act. If Myro was plaintiff's employer at the time of the accident, the claim for contribution against it is barred. If Myro was not plaintiff's employer, the claim for contribution may be maintained.

The undisputed facts are as follows. On August 8, 1977, plaintiff applied for employment with Olsten of Milwaukee, Inc. ("Olsten"). Olsten is engaged in the business of providing temporary help to various businesses and factories. In effect it is a labor broker. On August 15, 1977, Olsten assigned plaintiff to work at Myro, and she reported to work on that day. Olsten provided plaintiff with no instructions concerning her job assignment other than where to show up for work. Upon reporting to work at Myro, she received her job instructions from a Myro supervisor. During the week she worked at Myro, she reported directly to the plant and received her orders from Myro personnel. It was a Myro supervisor who directed plaintiff to operate the allegedly defective machine a half hour before the accident.

Plaintiff was paid her wages by Olsten. Olsten paid plaintiff's Social Security and witholding taxes. Olsten had the right to discipline or fire plaintiff or to reassign her to another workplace. When plaintiff was injured, it was Olsten's insurance carrier that paid her workmen's compensation benefits. At the time of the accident, plaintiff considered herself an employee of Olsten's although she intended to apply for a full time position with Myro.

■ The parties agree that Olsten was plaintiff's "general" employer. The point of contention is whether plaintiff also became a "special" or "loaned" employee of Myro. The Wisconsin Supreme Court has enunciated a four part test to be applied in cases of this nature. The questions that must be answered are: (1) Did the employee actually or impliedly consent to work for a special employer? (2) Whose work was he performing at the time of injury? (3) Whose was the right to control the details of the work being performed?, and (4) For whose benefit primarily was the work being done? *Nelson v. L & J Press Corp.*, 65 Wis.2d 770, 778, 223 N.W.2d 607 (1974); *Seaman Body Corporation v. Industrial Comm.*, 204 Wis. 157, 163, 235 N.W. 433 (1931). It is the answer to the first question which is to be accorded the greatest weight. *Ryan, Inc. v. ILHR Department*, 39 Wis.2d 646, 650, 159 N.W.2d 594 (1967).

■ Defendant argues that plaintiff at all times considered herself an employee of Olsten and never consented to becoming an employee of Myro. Defendant has introduced an application form signed by plaintiff in which it is explicitly stated that plaintiff would be considered an Olsten employee during the term of her employment. Defendant also points to plaintiff's stated intention to apply for permanent work with Myro at a later date as showing that at the time of the accident she was still employed by Olsten.

The question, however, is not which company plaintiff considered to be her employer, for that is merely a legal conclusion. The question is whether by her actions plaintiff consented to work for Myro. The facts of the case strongly indicate that she did so consent. Plaintiff accepted her assignment to Myro willingly. All of her work was performed on Myro's premises.

She reported to Myro every morning and performed the tasks assigned to her. She placed herself under the supervision of Myro personnel and took her directions from them. Under the circumstances, it can only be concluded that plaintiff consented to work for Myro.

The other three tests set out by the Wisconsin Supreme Court also lead to the conclusion that plaintiff was a special employee of Myro. At the time plaintiff was injured, she was operating a machine which manufactured sealing tape, a product of Myro's. The manufacture of this produce was a part of Myro's regular operations and the operation of the machine can only be characterized as work performed for Myro.

The details of the work performed were completely controlled by Myro. Plaintiff was under the supervision of Myro personnel as to all aspects of her job performance.

Finally, plaintiff's work benefitted both Myro and Olsten. Myro received the tangible benefits of her work output while Olsten undoubtedly received a fee from Myro for procuring plaintiff's services. The fact that both companies benefitted from her work, however, does not militate against the conclusion that plaintiff was a special employee of Myro.

The instant case is similar to *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 168 N.W.2d 599 (1968). In that case, a labor broker called Commercial Maintenance undertook to provide the Krause Milling Company with replacements for workers who were out on strike. Commercial Maintenance procured the workers, paid their wages, obtained workmen's compensation insurance, paid withholding and Social Security taxes, and was liable for unemployment compensation assessments. Krause Milling, on the other hand, controlled the day to day activities of the workers provided by Commercial Maintenance. The workers were directed to report to a specified foreman or department to do whatever work the Krause Milling supervisors required. Commercial Maintenance had no control over the workers once they were inside the plant.

Plaintiff was injured while working at Krause Milling. His workmen's compensation benefits were paid by the insurer of Commercial Maintenance. Plaintiff subsequently filed suit against Krause Milling.

The Wisconsin Supreme Court upheld the trial court's grant of summary judgment in favor of Krause Milling on the ground that the claim was barred by the Workmen's Compensation Act. Under the tests set out above, the Court concluded that plaintiff had consented to work for Krause Milling, that he was working for Krause Milling's benefit, and that Krause Milling controlled the details of the work being performed. Accordingly, plaintiff was adjudged a special employee of Krause Milling.

The *Freeman* case is practically indistinguishable from the case at bar. The fact that Myro is a third party defendant rather than a principal defendant is of no significance. Accordingly, I find that the third party claim against Myro is barred by the Workmen's Compensation Act and that summary judgment must be entered.

IT IS THEREFORE ORDERED that the motion of the third party defendant Myro, Inc., for summary judgment is hereby granted.