Thomas CHERRY, et al., Appellants,

v.

Peter CHUSTZ, et al., Appellees.

No. 05–85–01124–CV.

Court of Appeals of Texas,
Dallas.

July 22, 1986.

Rehearing Denied Sept. 12, 1986.

R. Allen Jones, Les Weisbrod, Dallas, for appellants.

Kip A. Petroff, Irving, Eugene W. Brees, II, Dallas, for appellees.

Before AKIN, SCALES and GUILLOT [1], JJ.

AKIN, Justice.

Thomas Cherry and his wife, Sharon K. Cherry, ("Cherry") appeal from summary judgments rendered against them in their

1. The Honorable Patrick Guillot concurred in the result prior to his resignation.

suit for personal injuries against Peter Chustz and his wife, doing business as Dallas Truck and Refrigeration, (Chustz) and National Seating Company. The trial court granted summary judgment for Chustz because it held that, as Thomas Cherry's employer, he was entitled to the immunities from suit for negligence provided by the Texas Workers' Compensation Law[2] ("the Act"). The court granted summary judgment for National Seating because it held that the statute of limitations barred recovery by Cherry against that defendant. Cherry attacks both judgments in nine points of error asserting that Chustz is not entitled to the benefits of the Act and that the statute of limitations under the Texas Business and Commerce Code[3] ("the Code") did not begin to run as to its cause of action against National Seating until the time of Thomas Cherry's injury. We disagree with all of Cherry's contentions; consequently, we affirm the judgment of the trial court.

Cherry brought this action alleging that he received spinal injuries due to a defective seat in the truck he drove in the course of employment. The truck was owned and maintained by Chustz, and the seat component was manufactured and installed into the truck as an original component by National Seating. At the time Thomas Cherry sustained his alleged injuries, he was operating the truck pursuant to an Independent Contractor Operating Agreement between Chustz and E. L. Farmer & Co. The operating agreement provided that Chustz was to supply trucks and drivers to E. L. Farmer, pay all salaries to the drivers, select their routes, and hire and fire them. E. L. Farmer was to pay workers' compensation premiums on the drivers supplied by Chustz. The summary judgment evidence in the record before us clearly establishes that Chustz was Thomas Cherry's employer at the time of his alleged injury. Furthermore, Cherry has not brought forth any evidence to refute this point or to show that any one other than Chustz was his employer. Thus, Chustz has established as a matter of law that he was Thomas Cherry's employer. It is further uncontradicted that Cherry collected workers' compensation benefits for his alleged injuries.

◼ Nevertheless, Cherry contends that Chustz is not entitled to the immunities of the Act because the premiums were "paid" by E. L. Farmer, pursuant to the terms of the operating agreement, rather than by Thomas Cherry's employer Chustz. Further, Cherry's claims for workmen's compensation benefits were made against E. L. Farmer as his "employer" and paid by E. L. Farmer's insurance carrier. We do not agree that this is sufficient to establish that Chustz did not "pay" the premiums as contemplated by article 8309, section 1 of the Act. That section defines the following terms:

"Employer" shall mean any person ... that makes contracts of hire.

"Employee" shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written....

"Subscriber" shall mean any employer who has become a member of the association by *paying* the required premium....

(Emphasis added). Article 8306, section 3(a) provides for immunity under the Act as follows:

The employees of a *subscriber* ... shall have no right of action against their *employer* ... for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against *such subscribing employer* ... for damages for injuries resulting in death....

(Emphasis added). We note initially that the statute seems to state that, while a deceased employee's beneficiaries are barred from suing only the "subscribing employer," an injured employee is barred from suing any of his employers if he is also the employee of a subscriber. We

---

2.  TEX.REV.CIV.STAT.ANN. art. 8306 *et seq.* (Vernon 1967 and Vernon Supp. 1986).

3.  TEX.BUS. & COM. CODE ANN. § 2.725 (Tex. UCC) (Vernon (1968).

doubt that the legislature intended to enact so inexplicable a scheme, but we need not attempt to clarify this provision in this case. Instead, we hold that, in addition to being Thomas Cherry's "employer" under the statute, Chustz has also shown as a matter of law that he was a "subscriber" under the statute. Consequently, regardless of the proper interpretation of the apparently conflicting provisions of article 8306 section 3, Chustz is entitled to the protection from common law liability for negligence afforded by the Act.

In reaching this conclusion, we need not decide whether Chustz and E. L. Farmer were "dual employers"[4] of Thomas Cherry at the time of his injury. If Chustz was both a subscriber and an employer, the theory of dual employment is not necessary to allow Chustz to enjoy the benefits of the Act. In addition, Cherry has presented no summary-judgment evidence in the record before us to show that E. L. Farmer was also an employer of Thomas Cherry, aside from the fact that benefits were paid through E. L. Farmer's carrier. This is not evidence that E. L. Farmer was, in fact, an employer of Thomas Cherry. *See Employers Casualty Co. v. American Employers Insurance Co.*, 397 S.W.2d 292, 296 (Tex. Civ.App.—Amarillo 1965, writ ref'd n.r.e.).

The payment of the workmen's compensation premiums by E. L. Farmer is shown by the undisputed summary-judgment evidence to have been pursuant to the operating agreement wherein E. L. Farmer acknowledges that the drivers are the employees of Chustz but, as part of the consideration under that contract, specifically agrees to pay those premiums. We see no reason why an employer cannot contractually provide for payment of premiums on his employees by a third-party acting on his behalf. *See Big Mack Trucking Co. v. Dickerson*, 482 S.W.2d 1, 8 (Tex.Civ.App.— Houston [1st Dist.] 1972) (whether or how

premiums were paid is irrelevant in determining employer's status as a subscriber), *rev'd*, 497 S.W.2d 283 (Tex. 1973) (employer may not pay premiums from amounts withheld from employee's wages) art. 8306 § 12g. of the Act; *Le Jeune v. Gulf States Utilities Co.*, 410 S.W.2d 44, 48 (Tex.Civ. App.—Beaumont 1966, writ ref'd n.r.e.) (whether premiums paid or in what manner irrelevant so long as compensation policy was in force). *See also Simmons v. Atlas Vac Machine Co.*, 493 F.Supp. 1082 (E.D. Wis. 1980) (special employer entitled to benefits of workmen's compensation law when general employer paid premiums in dual employment situation); *St. Claire v. Minnesota Harbor Service, Inc.*, 211 F.Supp. 521, 528 (D.C.Minn.1962); *Hoffman v. National Machine Co.*, 113 Mich. App. 66, 317 N.W.2d 289, 292 (1982) (employer protected by worker's compensation act even though not responsible for paying the premiums); *Danek v. Meldrum Manufacturing and Engineering Co., Inc.*, 312 Minn. 404, 252 N.W.2d 255, 259–60 (1977) (special employer entitled to benefits of workmen's compensation act though premiums paid by general employer in dual employment situation); *Antonini v. Hanna Industries*, 94 Nev. 12, 573 P.2d 1184, 118– 90 (1978); *Campbell v. Central Terminal Warehouse*, 56 Ohio St.2d 173, 383 N.E.2d 135, 136, n. 1 (1978) (although special employer paid no premiums for the employee, general employer did and special employer thus complied with law and entitled to benefits); *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 168 N.W.2d 599 (1969).

To require Chustz to personally prepare and sign the checks paying the premiums would serve no useful purpose and would put a strained construction on the word "paying." On the other hand, the policies and goals of the Act are fully served by an arrangement for payment of the premiums such as was here undertaken. Naturally,

---

4. The dual employment theory has been recognized by us twice before in the context of workmen's compensation cases but has not yet been reached on the merits by this court. *See Thate v. Texas & Pacific Railway*, 595 S.W.2d 591, 596,

n. 1 (Tex.Civ.App.—Dallas 1980, writ dism'd); *Associated Indemnity Co. v. Hartford Accident & Indemnity Co.*, 524 S.W.2d 373, 376 (Tex.Civ. App.—Dallas 1975, no writ). For treatment of this issue by other courts, see cases cited *infra*.

had E. L. Farmer breached the contract and failed to obtain the required workers' compensation coverage, Chustz would be entitled to no protection under the Act although he might have a cause of action in breach of contract against E. L. Farmer. That is not, however, the situation in this case. E. L. Farmer did obtain the coverage, Cherry collected under it, and Chustz is fully protected as a subscribing employer.

We also affirm the summary judgment as to National Seating. The undisputed summary judgment evidence shows that the truck here in question was delivered in 1976. The injury to Thomas Cherry occurred in 1981 and National Seating was not joined as a defendant until 1984, almost eight years after delivery of the truck. Cherry brings this action against National Seating for products liability and breach of warranty under warranty provisions of the Code.

Because the suit was brought more than two years after the alleged injury, the two-year tort statute of limitations bars any claim for strict products liability against National Seating. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). Because the suit was brought more than four years after the delivery of the truck, section 2.725 of the Code bars the breach of warranty claims against National Seating. *Safeway Stores, Inc. v. Certainteed Corp.*, 687 S.W.2d 22, 24 (Tex.App.—Dallas 1984), *rev'd on other grounds*, 710 S.W.2d 544 (Tex. 1986); *Fitzgerald v. Caterpillar Tractor Company*, 683 S.W.2d 162, 165–66 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.); *Weeks v. J.I. Case Company*, 694 S.W.2d 634, 636 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.). Section 2.725 specifically provides as follows:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(b) ... A breach of warranty occurs when tender of delivery is made....

We agree with the above cases that a cause of action under article two of the Code for breach of warranty resulting in personal injuries accrues when the delivery is made and is barred four years thereafter. Consequently, we affirm the judgment of the trial court.