**Jaime AGUILAR, Appellant,**

v.

**WENGLAR CONSTRUCTION COMPANY, INC., Appellee.**

**No. 13-92-509-CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 28, 1994.

---

John T. Kirtley, III, Dudensing & Webb, Houston, for appellant.

Glenn Baer Huebner, Giessel, Stone, Barker & Lyman, Houston, for appellee.

Before KENNEDY, DORSEY, and FORTUNATO P. BENAVIDES[1], JJ.

## OPINION

KENNEDY, Justice.

Jaime Aguilar sued Wenglar Construction Company for personal injuries sustained in a work-related accident. The trial court granted a take-nothing judgment in favor of Wenglar on the ground that Aguilar was a borrowed servant whose only remedy was under the Texas Workers' Compensation Act. Aguilar brings two points on appeal challenging the legal and factual sufficiency of the evidence to show that he was Wenglar's borrowed servant or that his claim was limited to workers' compensation. We reverse and remand.

Aguilar worked for El Campo Rice Mill (Elco) as a general laborer. For the week of July 21, 1989, Elco generally shut down its

---

[1] Assigned to this Court by the Chief Justice of the Supreme Court of Texas Pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

operations while Wenglar was hired to perform general maintenance on the facility. In the process of performing such maintenance, one of the elevator belts for conveying grain broke. Elco normally repairs these breaks when they occur, but it was also within the scope of Wenglar's business to replace the belts as a part of its maintenance duties. When the belt in question broke, the Elco plant manager instructed three Elco employees, including Aguilar, to help Wenglar employees replace the belt, although Elco had no obligation to offer such help. The Elco plant manager understood that the Wenglar foreman then exercised complete control over the details of the work and the personnel, although Elco retained the right to intervene and change the way the work was done. Wenglar instructed the Elco employees to stand next to a door and help guide or pull the elevator belt through that door. A Wenglar employee then drove his truck forward to pull the belt into place. However, the rope used to pull the belt got caught and broke a pulley to which it was attached. A fragment of that pulley struck Aguilar in the arm, causing the injuries the subject of the present action.

By his first point of error, Aguilar challenges the legal and factual sufficiency of the evidence to support the trial court's finding that he was a borrowed servant of Wenglar. In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex. 1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

 The borrowed servant doctrine is implicated when the nominal or general employer loans or supplies an employee to another, who is termed the special employer and who then has temporary responsibility for the employee and his conduct. In deter-

mining whether responsibility shifts under the borrowed servant doctrine, the issue is which employer has the right of control over the actions of the employee at the time in question. *Lara v. Lile*, 828 S.W.2d 536, 538 (Tex.App.—Corpus Christi 1992, writ denied). Regardless of the contractual relationship between the general employer and the special employer, a "borrowed servant" relationship may be established by showing the special employer's right of control to direct the details of work done by the borrowed employee. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 n. 2 (Tex.1992); *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327, 331 (Tex.1968); *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963).

 Several factors enumerated in Restatement (Second) of Agency § 227(c) (1958), are helpful in analyzing the contrast between the general employer's retention of right of control over his employee and the right of control of the special employer. These factors include situations in which (1) the machine utilized by the borrowing employer is both owned by the general employer and operated by the general's employee; (2) the servant is expected to operate the machine in the way his general employer would expect while giving only the results called for by the borrower; (3) the general employer can substitute another employee at any time; (4) the servant is borrowed for merely a temporary period of time; (5) the employee has the skill of a specialist. *See Lara*, 828 S.W.2d at 538; *see also Wigart*, 431 S.W.2d at 331; *McKay*, 366 S.W.2d at 226.

 In the present case, those factors suggesting that Elco retained control include the ownership of the belt, pulley and generally the machine being repaired at the time, the right of Elco to reassign Aguilar at any time to some other task, and the temporary nature of the job.

However, these factors are in the final analysis merely aids to determine the ultimate question of which employer has the right of control to direct the details of the work, which must be reviewed on a case-by-case basis. *Wigart*, 431 S.W.2d at 332;

*Lara,* 828 S.W.2d at 540. In the present case, there is no dispute that Wenglar had the right to control the details of the work done by Aguilar. The Wenglar foreman controlled such basic things as where Aguilar stood and what he physically did to help repair the belt, a process with which Aguilar had no training, skill or experience, and on which he needed basic guidance in order to perform.[2] This is exactly the type of direction and control contemplated by the doctrine of borrowed servant which would then place Aguilar temporarily under the employ of Wenglar for purposes of its responsibility for his conduct and his safety in performing the job. We hold that there was legally and factually sufficient evidence to support the trial court's finding that Aguilar was a borrowed servant of Wenglar at the time he was injured.

■ We note that Aguilar also argues in the alternative under his first point of error, that he should be deemed an employee of Elco under the terms of the prior workers' compensation law in effect at the time of his injury. Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (repealed) defined those who may be "deemed employees" to include "such persons, other than independent contractors and their employees, as may be engaged in the work of the employer of enlargement, construction, remodeling or repairing of the premises or buildings used in the conduct of the business of the employer." However, we find the statute to be of no assistance in the present case, where the relevant question is whether Aguilar remained the employee of Elco or was the borrowed servant of Wenglar. Wenglar clearly being an independent contractor for Elco, if Aguilar became a temporary employee of Wenglar under the borrowed servant doctrine, he may not be deemed an employee of Elco under the terms of the statute. We overrule Aguilar's first point of error.

■ By his second point of error, Aguilar challenges the legal and factual sufficiency of the evidence to support the trial court's conclusion that his claim is limited to workers' compensation. Specifically, Aguilar contends that there was no evidence that Wenglar gave the notices required by the Workers' Compensation Act[3] in order for it to attain the status of a subscriber.

Although Aguilar acknowledges that employees, including borrowed servants, generally have no right of action for personal injury against an employer who subscribes to workers' compensation coverage,[4] he argues that Wenglar may not take advantage of that statute because it failed to prove that it gave proper notice of its coverage to either Aguilar or the Industrial Accident Board.

Tex.Rev.Civ.Stat.Ann. art. 8308, § 19 generally requires every subscriber to give notice "to all persons under contract of hire with him that he has provided for payment of compensation for injuries with the association." In addition, section 18a of that article also requires the employer's compensation insurer to notify the Industrial Accident Board of its coverage. Finally, Tex.Rev.Civ. Stat.Ann. art. 8306, § 3c ties together these two sections of article 8308 by making the filing of this notice with the Board constructive notice to the employees for purposes of satisfying section 19. *See Ferguson v. Hospital Corporation International, Ltd.,* 769 F.2d 268, 270 (5th Cir.1985).

In *Ferguson,* the Fifth Circuit, examining the Texas Workers' Compensation Act, held that an employer's failure to comply with these notice provisions barred it from claiming subscriber status under the Act:

Because the workers' compensation scheme remains voluntary in Texas, an employer's notice to the state is critical to determine whether an employee had the intention to be a subscriber under the Act. We have pointed out in tracing the history of the notice requirements that while the

---

**2.** *Cf. Wigart,* 431 S.W.2d at 332 (relative experience of the employee in the operation of the equipment in question and the inexperience of the special employer suggested that control of the employee did not pass to the special employer).

**3.** All references are to the former Texas Workers' Compensation Act as it existed prior to its 1989 repeal, effective January 1, 1991. *See* Tex.Rev. Civ.Stat.Ann. arts. 8306, 8308 (Vernon 1967).

**4.** *See* Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(a); *Exxon Corp.,* 842 S.W.2d at 630–31.

Act virtually dispenses with notice to employees of subscriber status, notice to the State via filing with the Board has remained a critical factor in determining whether an employer intended to be a subscriber under the Act. The simple act of filing notice with the Board is a clear manifestation of this intention under the Act. Without notice, the state, injured employees, and the courts should not be compelled to second-guess the employer as to his true intention.

*Id.* at 273; *see also Kielwein v. Gulf Nuclear, Inc.,* 783 S.W.2d 746 (Tex.App.—Houston [14th Dist.] 1990, no writ).

Our Court later applied the same rationale to deny subscriber status to the employer in *Brown Services, Inc. v. Fairbrother,* 776 S.W.2d 772 (Tex.App.—Corpus Christi 1989, writ denied). We first noted that the assertion that an employee's common law remedies under Texas law are not available because his employer was a subscriber under Texas Workers' Compensation law is a matter of avoidance and an affirmative defense. *Id.* at 775–76; *see also Exxon Corp.,* 842 S.W.2d at 631. We then concluded, in reliance on *Ferguson,* that as a part of its burden to show that it was a subscriber, the employer must affirmatively show that it complied with the notice requirements of article 8308 section 19 of the Workers' Compensation Act. *Fairbrother,* 776 S.W.2d at 776; *see also Harris v. Varo, Inc.,* 814 S.W.2d 520, 523–24 (Tex.App.—Dallas 1991, no writ).

In the present case, however, Wenglar contends that the notice requirements of section 19 only apply to those employees "under contract of hire" and cannot be engrafted on to the borrowed servant situation. Although we acknowledge that the individual notice provisions of section 19 may be inapplicable and certainly impractical with regard to the situation of a temporary borrowed servant, nevertheless, the general requirement of notice to the Board is just as valid in the context of a borrowed servant as with regard to regular employees seeking to assert common-law causes of action against an employer who raises the workers' compensation defense.

In the present case, there has been no affirmative showing of notice to the Board or to Aguilar. The only evidence of Wenglar's status was the conclusory testimony of Douglas Wenglar, the president of Wenglar Construction Company, that his company was a subscriber to workers' compensation coverage in July 1989. It was Wenglar's burden to affirmatively prove that it had notified the Industrial Accident Board such that its employees, both regular and borrowed servants, were put on constructive notice of such coverage. Because Wenglar failed to present any evidence that it complied with the notice requirements and was thus entitled to be treated as a subscriber, we hold that there was no evidence to support the trial court's finding and conclusion that Aguilar's claim is limited to workers' compensation. We sustain Aguilar's second point of error.

We REVERSE the judgment of the trial court and REMAND this case for a new trial consistent with this opinion.

FORTUNATO P. BENAVIDES, J., not participating.