**William BROWN, Jr. and Mary Ella Brown, Appellants,**

v.

**AZTEC RIG EQUIPMENT, INC. and Administaff, Inc., Appellees.**

No. 14–95–00731–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 18, 1996.

Rehearing Overruled May 23, 1996.

Don M. Barnett, Houston, for appellants.

John H. Spurgin, Olive Penelope Hobbs, Austin, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

LEE, Justice.

This is an appeal from a summary judgment in a workers' compensation, third-party suit. Appellants William Brown and his wife, Mary, filed a negligence suit against appellees Aztec Rig Equipment, Inc. (Aztec) and Administaff, Inc. (Administaff) for alleged personal injuries sustained by Mr. Brown on Aztec's premises.[1] Aztec and Administaff moved for summary judgment on several grounds, including that the Browns' suit was barred by the exclusive remedy provision of the Texas Workers' Compensation Act ("the Act").[2] The trial court entered a judgment granting summary judgment for Aztec and Administaff on this ground. The Browns appeal from the court's judgment and raise twenty-four points of error attacking each of the grounds asserted in the amended motion for summary judgment filed by Aztec and Administaff. Because we find the Browns' suit is barred by the exclusive remedy provision of the Act, we affirm the court's judgment.

---

1. Mary Brown seeks damages for loss of consortium. Because her claim is derivative of her husband's negligence action, Mrs. Brown can recover only if she establishes the tortfeasor's liability for her husband's injuries. *See Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738–39 (Tex.1981).

2. Tex.Rev.Civ.Stat.Ann. art. 8308–4.01, Act of December 13, 1989, 71st. Leg., 2nd C.S. ch. 1, 4.01, 1989 Tex.Gen.Laws 1, 32 (effective January 1, 1991), *repealed by* Act of September 1, 1993, 73rd Leg., R.S. ch. 269, 1, 1993 Tex.Gen.Laws 987, 1132–33 (current version at Tex.Lab.Code Ann. 408.001 (Vernon Pamph.1995)).

The following facts are established by the uncontroverted summary judgment proof. Administaff is in the business of staff leasing. It performs personnel management functions for their clients. Through Client Service Agreements with small businesses, Administaff employs the existing work force of its clients and leases them back to carry out the client's business. Aztec is in the business of repairing and refurbishing oil and gas equipment. Through a series of one-year Client Service Agreements, Aztec has been Administaff's client since 1988. Under those agreements, Administaff agreed to lease employees to Aztec to carry out Aztec's business. In particular, Aztec's President, Glenn Taylor, was designated as Administaff's on-site supervisor for personnel matters, but remained responsible for overseeing Aztec's business. Administaff also agreed to "furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all Administaff employees furnished to Client pursuant to the terms of this Agreement." The agreements further provide that Administaff was the employer for some purposes. Aztec was the employer for some purposes, and both Administaff and Aztec were co-employers for other purposes. For example, Aztec was required to comply with OSHA regulations. Administaff, on the other hand, was required to comply with the applicable workers' compensation laws, "including but not limited to: (i) procuring workers' compensation insurance; (ii) completing and filing all required reports; and (iii) managing claims." However, the agreements state specifically that both "Administaff and Client will be considered co-employers (dual or joint employers) of those persons furnished to Client by Administaff" for purposes of "employer liability under workers' compensation laws." In Exhibit A, which was attached to the 1991 and 1992 agreements, Mr. Brown is listed as one of "those persons furnished to Client by Administaff."

On November 5, 1990, and March 14, 1991, Mr. Brown signed identical employment agreements with Administaff. Under the agreements, Mr. Brown was assigned to work for Aztec, Administaff's client company. Mr. Brown also agreed that "for the purpose of workers' compensation coverage, he is an employee of both Administaff and Client Company." The agreements state that "in the event of any injury, Employee agrees that his sole remedy lies in coverage under Administaff's workers' compensation policy under the theory that Administaff and Client Company are co-employers." On January 17, 1992, and April 15, 1993, Mr. Brown was allegedly injured on Aztec's premises. At the time, Mr. Brown was performing certain activities for Aztec's business under the direction of supervisors employed by Administaff, but leased to Aztec to carry out Aztec's business. As he had done for three other work-related injuries, Mr. Brown sought workers' compensation benefits under Administaff's policy in effect at the time.

At the contested case hearing held in September 1993, a hearing examiner found Mr. Brown was not entitled to benefits for either alleged injury. See Tex.Lab.Code Ann., 410.151–410.169. Mr. Brown appealed the examiner's ruling. See id. 410.201–410.208. During the pendency of that appeal, the Browns' filed this suit. In January 1994, the appeals panel reversed the hearing officer's decision regarding the alleged injury on January 17, 1992, and remanded the case for further consideration of notice issues. The panel affirmed the hearing officer's decision regarding the alleged injury on April 15, 1993. Specifically, the panel found the evidence was sufficient to support the hearing officer's decision that Mr. Brown did not suffer a compensable injury. See id. 401.011(10). Mr. Brown did not seek judicial review of this part of the appeals panel decision. See id. 410.251–410.308.

In points of error one through twenty-one, the Browns contend the trial court erred in granting summary judgment based on Tex. Lab.Code Ann. 408.001, the exclusive remedy provision of the Act.

Section 408.001(a) states:

Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or

a work-related injury sustained by a covered employee.

■ As we noted earlier, Aztec and Administaff moved for summary judgment on several grounds. However, the trial court granted summary judgment in favor of Aztec and Administaff solely on the ground that the Browns' claims were barred by section 408.001. This is specified in the court's judgment. In points of error twenty-two through twenty-four, the Browns attack other grounds asserted by Aztec and Administaff in their amended motion for summary judgment.[3] We need not address these points of error because the summary judgment must stand or fall on the ground specified in the court's judgment. Where the trial court's order explicitly specifies the ground relied on for the summary judgment ruling, the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious, otherwise the case must be remanded. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (plurality opinion).

■ The standard of review for summary judgments is well-established. A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true, the court indulging every reasonable inference and resolving any doubts in favor of the non-movant. *Nixon* 690 S.W.2d at 548–49; *Montgomery,* 669 S.W.2d at 310. In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment; rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828–29 (Tex. 1970). If the appellate court finds the movant has not met its burden, it must reverse and remand the case for further proceedings. *Gibbs,* 450 S.W.2d at 828–29. To prevail on summary judgment, a defendant, as the movant, must establish as a matter of law all the elements of an affirmative defense or that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Montgomery,* 669 S.W.2d at 310–11; *Gibbs,* 450 S.W.2d at 828.

As they did in their amended motion for summary judgment and supporting brief, Aztec and Administaff contend the exclusive remedy provision bars the Browns' suit. They assert they are co-employers of Mr. Brown and as such, can both claim immunity under section 408.001 because Mr. Brown is covered by Administaff's workers' compensation policy. Alternatively, they assert the Browns failed to state a valid, third-party cause of action against the non-employer. Specifically, they contend that if Mr. Brown was the "borrowed servant" of Aztec then Aztec is entitled to employer immunity under section 408.001 and Administaff did not exercise the requisite degree of control over Mr. Brown's work activities to give rise to third-party liability. Conversely, they contend that if Mr. Brown was employed by Administaff then Administaff is entitled to employer immunity under section 408.001 and Aztec did not exercise the requisite degree of control over Mr. Brown's work activities to give rise to liability.

As they did below, the Browns essentially take two positions. First, they contend Aztec is not entitled to employer immunity under section 408.001 because it was not a "subscriber." They point out that Aztec does not appear as a named insured on Administaff's workers' compensation policies and Aztec failed to comply with the notice provisions of the Act. Second, they contend that Aztec and Administaff cannot as a matter of law be co-employers and that a fact issue exists regarding who had the right of control over the manner and details of Mr. Brown's work. The Browns contend that if Administaff had the right of control, then Mr. Brown

---

**3.** Those grounds are as follows: (1) the suit for damages based on the alleged injury of April 15, 1993, is barred by collateral estoppel; (2) the suit for damages based on the alleged injury of January 17, 1992, is barred by limitations; and (3) Mr. Brown waived his common-law claims.

was not Aztec's borrowed servant and Aztec was subject to third-party liability on a premises liability theory. *See* TEX.LAB.CODE ANN. 417.001–417.004. Alternatively, they contend that if Aztec had the right of control then Mr. Brown was Aztec's borrowed servant and Administaff was subject to third-party liability "to the extent [it] had the right of control."

■ We first address the "subscriber" issue. At the time of Mr. Brown's alleged injuries, the state legislature had deleted the term "subscriber" from the Act and expanded the definition of "employer" to "a person that makes a contract of hire, that employs one or more employees, and **that has workers' compensation insurance coverage.**" *See* TEX.REV.CIV.STAT.ANN. art. 8309 § 1, *repealed by* Act of December 13, 1989, 71st Leg., 2nd C.S. ch. 1, § 16.01, 1989 Tex.Gen. Laws 1, 114–115 (effective January 1, 1991) (codified at TEX.REV.CIV.STAT.ANN. art. 8308–1.03(19)) (emphasis added). The Browns do not contest Administaff's status as an "employer" under the Act. Indeed, it is uncontroverted that Administaff carried workers' compensation insurance at the time of Mr. Brown's alleged injuries.[4] However, because Aztec was not the named insured on either of the workers' compensation policies in effect at the time, the Browns' argue Aztec did not have workers' compensation coverage. This is incorrect. Administaff's Client Service Agreements with Aztec specifically require Administaff to purchase workers' compensation insurance "covering all Administaff employees furnished to [Aztec] pursuant to the terms of [their] agreement." Further, the Client Service Agreements and Mr. Brown's employment agreements expressly provide that Administaff and Aztec are co-employers for purposes of workers' compensation coverage. In addition, the uncontroverted summary judgment proof is that Administaff purchased workers' compensation insurance using the service fees paid by Aztec.[5]

The Browns contend the alternate employer endorsements in the Administaff policies in effect at the time did not relieve Aztec from its obligations to secure workers' compensation coverage and to give notice that it had obtained such coverage as required by the Act. *See* TEX.REV.CIV.STAT.ANN. art. 8308, §§ 18(a), 19 (repealed 1991); TEX.REV. CIV.STAT.ANN. art. 8308–3.24, 3.25 (repealed 1993). They quote the following language of the endorsement:

> The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure obligations under the workers' compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

In support of their argument, the Browns rely on *Zavala–Nava v. A.C. Employment, Inc.*, 820 S.W.2d 14 (Tex.App.—Eastland 1991, writ denied). In that case, the plaintiff was hired and paid by an employment agency, Ajax, to work for Centron. 820 S.W.2d at 15. Pursuant to contract, Ajax provided workers' compensation coverage and charged Centron a contract fee which included the wage payments, tax deductions, compensation insurance premiums and a profit margin. *Id.* When the plaintiff was injured, he filed a common-law cause of action against Ajax and Centron. *Id.* Both filed motions for summary judgment seeking immunity under the exclusive remedy provision of the Act in effect at the time. *Id.; see* TEX.REV.CIV.STAT. ANN. art. 8306, § 3 (repealed 1991). The trial court granted the motions. 820 S.W.2d at 15. The appellate court affirmed as to Ajax, finding that Ajax was a "subscriber" as the named insured on the workers' compensation policy. *Id.* at 16. However, the court reversed as to Centron. *Id.* Quoting the same language of the alternate employer endorsement quoted above, the court found that Centron was not a "subscriber." *Id.* at 16–17. Although *Zavala–Nava* applied the

---

4. The Administaff policies in effect at the time of Mr. Brown's injuries are attached to Aztec's previous motion for summary judgment but are specifically referred to in Administaff's and Aztec's reply to the Browns' response.

5. The Browns also suggest there was no coverage because the Administaff policies at issue had a

$500,000.00 deductible clause. The Browns did not raise this ground in their response and therefore, it is waived. *See McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Act that was no longer in effect at the time of Mr. Brown's alleged injuries, the Browns argue that the case is still directly on point because the court specifically stated that the result would be the same "under the present law" (i.e., the law in effect at the time of Mr. Brown's alleged injuries). *See id.*

The alternate employer · endorsements in both policies at issue in this case declare "this endorsement applies only with respect to bodily injury to [Administaff's] employees while in the course of special or temporary employment by the alternate employer." They also state that "Part One (Workers' Compensation) . . . **will apply as though the alternate employer is insured.**" (emphasis added) More importantly, the typed language in the endorsement of these policies provide that "it is agreed that this endorsement **applies to all . . . clients and/or subscribers of [Administaff],** in its capacity as an employee leasing firm, where [workers compensation] is provided by the leasing firm."[6] (emphasis added). Because this typed language was not included in the policy at issue in *Zavala–Nava,* that case is inapplicable. *See id.* at 15–16.

■ Here, the Administaff workers' compensation policies, by their plain terms, covered all Administaff employees who were assigned to work for Aztec, the alternate employer. This included Mr. Brown. As for employees not assigned by Administaff, Aztec was responsible for providing workers' compensation insurance for those employees. Clearly, Aztec had workers' compensation coverage through Administaff and was an "employer" within the meaning of the Act. That conclusion is supported by the case law.

In *Cherry v. Chustz,* 715 S.W.2d 742, 743 (Tex.App.—Dallas 1986, no writ), the plaintiff, a truck driver, was assigned by his employer, Chustz, to drive a truck for E.L. Farmer. Under an operating agreement, Chustz supplied trucks and drivers and E.L. Farmer provided workers' compensation insurance. *Id.* When the plaintiff claimed injury during the course of employment, he sought workers' compensation benefits from

E.L. Farmer's carrier. *Id.* The plaintiff sued Chustz for personal injuries and the trial court granted summary judgment for Chustz under the exclusive remedy provision of the Act. *Id.* The appellate court affirmed, finding that Chustz was a subscriber under the Act by virtue of his agreement with E.L. Farmer. *Id.* at 744.

In *Marshall v. Toys–R–Us Nytex, Inc.,* 825 S.W.2d 193, 194 (Tex.App.—Houston [14th Dist.] 1992, writ denied), the plaintiff was an employee of Labor Systems assigned to work at Toys–R–Us, where she was injured. The plaintiff sought and received workers' compensation benefits through Labor Systems and filed a negligence suit against Toys–R–Us. *Id.* The trial court granted summary judgment in favor of Toys–R–Us based on the exclusive remedy provision. *Id.* at 195. This court affirmed, finding that Toys–R–Us was a subscriber under the Act because the agreement between Labor Systems and Toys–R–Us required Labor Systems to maintain worker's compensation insurance to cover the temporary employees assigned to Toys–R–Us. *Id.* at 197. We noted that the cost of that insurance was included in the fee paid by Toys–R–Us to Labor Systems. *Id.*

In *Gibson v. Grocers Supply, Co., Inc.,* 866 S.W.2d 757, 759 (Tex.App.—Houston [14th Dist.] 1993, no writ), the plaintiff was hired by Link and assigned to work at Grocers Supply, where he was injured. The plaintiff filed a negligence suit against Grocers Supply. *Id.* at 758–59. The trial court granted Grocers Supply's motion for summary judgment based on the exclusive remedy provision. *Id.* This court affirmed, finding that Grocers Supply was a subscriber under the Act because "the cost of insurance was included in the fee paid by Grocers to [Link] and . . . Link did provide insurance." *Id.* at 759 n. 2.

In *Pederson v. Apple Corrugated Packaging, Inc.,* 874 S.W.2d 135 136–37 (Tex.App.—Eastland 1994, writ denied), the plaintiff was employed by Staff Benefits and assigned to

**6.** The other policy contains the identical typed language except the phrase "who have been approved as the alternate employers by the compa-

ny" is substituted for the phrase "where [workers' compensation] is provided by the leasing firm."

Apple. The plaintiff was injured on Apple's premises while under Apple's direction and control. *Id.* The plaintiff sought and received workers' compensation benefits from Staff Benefits' insurance carrier. The plaintiff then filed a negligence suit against Apple alleging that even though it had the right to control her work, Apple was not a subscriber under the Act. *Id.* The trial court granted Apple's motion for summary judgment based on the exclusive remedy provision. *Id.* The appellate court affirmed, holding that the plaintiff was a "covered employee" of Apple because Apple carried its workers' compensation insurance "through an arrangement" with Staff Benefits. *Id.* at 137–38.

Finally, in *Rodriguez v. Martin Landscape Management, Inc.*, 882 S.W.2d 602, 603 (Tex. App.—Houston [14th Dist.] 1994, no writ), the plaintiff worked for Staftex, an employment services company, and was assigned to a job with MLM. On that job, the plaintiff was injured while riding in a vehicle driven by Fleeman, another Staftex employee. *Id.* The plaintiff sought and received workers' compensation benefits from Staftex and then filed a negligence suit against Fleeman and MLM. *Id.* The trial court granted summary judgment for Fleeman and MLM finding that MLM was entitled to immunity under the exclusive remedy provision. *Id.* The appellate court affirmed, holding that MLM was an "employer" for purposes of the Act because the contract between Staftex and MLM required MLM to pay fees to Staftex to cover workers' compensation premiums for assigned employees. *Id.* at 605.

As stated in *Cherry,* "we see no reason why an employer cannot contractually provide for payment of premiums on his employee by a third-party acting on his behalf." 715 S.W.2d at 744. The manner in which the insurance is paid is immaterial, so long as there is a compensation policy in force. *Gibson,* 866 S.W.2d at 759; *Marshall,* 825 S.W.2d at 197. Accordingly, we hold Aztec had workers' compensation coverage through Administaff and Aztec was an "employer" within the meaning of the Act. We also find Aztec is in compliance with the notice provisions of the Act. *See* TEX.REV.CIV.STAT.ANN. art. 8308, §§ 18, 19 (repealed 1991).

Notwithstanding the fact these provisions were not in effect when Administaff purchased the policies in question or when Mr. Brown was allegedly injured, the Browns maintain "the evidence establishes that Aztec failed to notify the Texas Workers' Compensation Commission that Aztec had obtained workers compensation insurance." They rely on *Aguilar v. Wenglar Constr. Co., Inc.,* 871 S.W.2d 829 (Tex.App.—Corpus Christi 1994, no writ). In *Aguilar,* the court reversed a take-nothing judgment in favor of the special employer because there was "no affirmative showing of notice to the Board or to [the employee]." 871 S.W.2d at 833. The court observed "it was [the special employer's] burden to affirmatively prove that it had notified the Industrial Accident Board such that its employees were put on constructive notice of such coverage." *Id.* In others words, the critical issue under former article 8308 was not so much whether the Commission was notified of coverage, but whether the employee had actual or constructive notice of coverage "sufficient to apprise him of the means to seek workers' compensation for his alleged injury." *Kielwein v. Gulf Nuclear Inc.,* 783 S.W.2d 746, 747 (Tex.App.—Houston [14th Dist.] 1990, no writ).

The summary judgment proof shows Mr. Brown was injured on Aztec's premises on three other occasions, including two incidents that occurred before the injuries in question and one after the injuries in question. He sought workers' compensation benefits on Administaff's policy for each of these injuries. Obviously, both the state and Mr. Brown had notice that Aztec was covered by the Administaff's policies. In *Marshall,* this court held the employee's receipt of workers' compensation benefits through the temporary employment services company was notice to the state and to the employee that the special employer was a subscriber under the Act. 825 S.W.2d at 197. Similarly, in *Rodriguez,* the court held the employee had constructive notice prior to the injury that the special employer had workers' compensation coverage because the employee had received workers' compensation benefits from the employment services company. 882 S.W.2d at 606.

Finally, in *Regalado v. H.E. Butt Grocery Co.*, 863 S.W.2d 107, 109 (Tex.App.—San Antonio 1993, no writ), the plaintiff was an employee of Industrial assigned to work at HEB, where he was injured. The plaintiff sought and received compensation through Industrial and then sued HEB for negligence. *Id.* at 109–10. The trial court granted HEB's motion for summary judgment based on the exclusive remedy provision. *Id.* at 110. In affirming the summary judgment, the appellate court found that the plaintiff had constructive notice of HEB's subscriber status. *Id.* The court based its holding on a copy of the workers' compensation and the uncontroverted affidavit testimony of HEB's claims coordinator that a policy was in full force and effect at the time. *Id.*

In this case, Aztec and Administaff offered as summary judgment proof copies of the policies in effect at the time of Mr. Brown's injuries. The uncontroverted affidavit of Administaff's Senior Vice–President, William Lange, confirms these "are copies of the workers' compensation policy [sic] covering William Brown Jr. for the periods, July 1, 1991 to July 1, 1992 and November 1, 1992 to November 1, 1993." Clearly, Aztec complied with the Act's notice provisions.

■ Having determined Aztec was an "employer" within the meaning of the Act and complied with the Act's notice provisions, we now turn the issue of immunity under the exclusive remedy provision. The Browns contend that even if both Administaff and Aztec had workers' compensation coverage, only one of them could be Mr. Brown's employer and entitled to immunity. As we stated, the trial court granted summary judgment solely on the basis of the exclusive remedy of provision of the Act. Implicit in the court's judgment is that Administaff and Aztec were both entitled to immunity as co-employers.[7] Administaff and Aztec argue in the alternative that if only one defendant had the right of control sufficient to be Mr. Brown's employer, then the Browns failed to state a cause action against the other defen-

dant. However, the trial court did not grant summary judgment based on the failure to state a cause of action. It is not a ground specified in the court's judgment. Thus, the summary judgment can only be affirmed as to both Administaff and Aztec if they are co-employers. *See State Farm*, 858 S.W.2d at 380.

Administaff and Aztec maintain the theory of joint employment has long been recognized at common law. The Restatement (Second) Of Agency, Section 226 recognizes that joint employment may exist in a given situation. It states as follows:

> A person may be the servant of two masters, [who are] not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other in Texas.

In actuality, the Restatement takes the concept of joint employment one step further by suggesting that an employee may serve two masters even if they are not "joint" or "co-" employers as advocated in this case. Most Texas courts, while not resorting to the theory of "joint" or "co-" employment, have acknowledged its viability. In *Insurors Indem. & Ins. Co. v. Pridgen*, 148 Tex. 219, 223 S.W.2d 217, 217–18 (1949), Smith's employee was assigned to operate a dragline for Sonnier when he was killed on the premises of a shipyard. In determining which of the three entities was responsible for workers' compensation coverage, the court suggested the possibility of a co-employer relationship, although it decided that one did not exist. *Id.* at 219. In *General Accident Fire & Life Assurance Corp. v. Callaway*, 429 S.W.2d 548, 549–51 (Tex.App.—Houston [1st Dist.] 1968, no writ), the court, without discussion of the theory, upheld a jury finding that the plaintiff was injured in the course and scope of joint employment for two companies. In *Associated Indem. Co. v. Hartford Accident & Indem. Co.*, 524 S.W.2d 373, 375 (Tex. App.—Dallas 1975, no writ), a case with strikingly similar facts, the insurance carrier

---

7. According to Administaff and Aztec, a docket entry shows the court found that Aztec was the employer. Assuming this were true, a docket entry is not generally sufficient to constitute a judgment or decree of the court. *Formby's KOA*

*v. BHP Water Supply Corp.*, 730 S.W.2d 428, 430 (Tex.App.—Dallas 1987, no writ). Thus, this was not the stated reason for the court's ruling. *See State Farm*, 858 S.W.2d at 380.

of a temporary employment company sought reimbursement for workers' compensation benefits paid to an employee injured while working for the employment company's customer. Although one of the parties argued there was a joint employment relationship, the court did not address the issue. *Id.* at 376. Similarly, in *Thate v. Texas & Pacific Railway Co.*, 595 S.W.2d 591, 595–96 n. 1, the court did not address the joint employment issue in determining that an injured employee could not bring an FELA claim after having sought workers' compensation benefits. Although none of these workers' compensation cases apply section 226 or expressly subscribe to the theory of joint employment, they do not reject it.

■ However, one Texas court has expressly recognized joint employment pursuant to section 226. In *White v. Liberty Eylau School Dist.*, 880 S.W.2d 156, 157 (Tex. App.—Texarkana 1994, writ denied), the plaintiffs were injured when their car was struck by school bus driven by Brantley. Brantley was employed as a bus driver by the transportation department and as a teacher by the school district. *Id.* The plaintiffs sued Brantley, the transportation department, the school district, and another defendant, who was later dismissed. *Id.* After the plaintiffs settled with Brantley and the transportation department, the trial court granted summary judgment for the school district on grounds that Brantley was not acting as an employee of the school district at the time of the collision. *Id.* Recognizing the theory of "joint control" under section 226, the appellate court reversed holding the summary judgment proof raised a fact issue "as to whether the school district and transportation department jointly controlled the operation of the school buses." *Id.* at 159–60. In this case, the summary judgment proof conclusively shows Administaff and Aztec were joint employers of Mr. Brown.

The Client Service Agreements and Mr. Brown's employment agreements, presented as summary judgment proof, unequivocally state Administaff and Aztec are co-employers for purposes of workers' compensation. As we discussed, Aztec was covered by Administaff's workers' compensation policies. In-deed, the summary judgment proof shows that Mr. Brown sought workers' compensation benefits under Administaff's policies for the alleged injuries that are the basis of this suit as well as three other alleged injuries, all of which occurred while Mr. Brown was carrying out Aztec's business. In affidavits attached as summary judgment proof, Mr. Brown's supervisors, including Aztec President Glenn Taylor, state they were "employed" by Administaff, but "assigned" to Aztec to carry out Aztec's business. They also state Mr. Brown was working under the same arrangement at the time of his alleged injuries. Under this arrangement, Administaff handled administrative matters relating solely to personnel management while Aztec directed and supervised the details of work to be done in furtherance of its business and provided the necessary tools and equipment. The affidavit testimony of Administaff Vice–President, William Lange, supports all of the above facts.

■ The summary judgment proof offered by the Browns does not contradict the co-employment relationship established by Administaff and Aztec. An excerpt from Glen Taylor's deposition attached to the Browns' response confirms the "co-employer type agreement that [Aztec] had with Administaff." So do the discovery responses filed by Administaff and Aztec and offered as summary judgment proof by the Browns. In particular, Aztec admits in its responses to request for admissions, that Administaff and Aztec were Mr. Brown's co-employers and Mr. Brown was in the course and scope of his employment with both Administaff and Aztec at the time of the incidents in questions. The Browns argue these are admissions that Mr. Brown worked for either Administaff or Aztec because the admissions only inquired whether one defendant or the other was Mr. Brown's employer. Thus, they claim they are entitled to ignore the part of the response that does not relate to the inquiry made. The Browns do not cite any authority for this novel proposition. Essentially, the Browns are requesting this court to disregard the plain language of discovery responses. We know of no authority allowing us to do so and decline the Browns' request.

The Browns point out that the summary judgment proof shows Administaff is providing Aztec's defense in this matter and that any judgment would be paid by Administaff. However, the fact that Administaff is providing a defense in a case where the alleged injuries occurred on Aztec's premises while carrying out Aztec's business goes more toward proving a co-employment relationship than to disproving one. The Browns also point out that William Lange's credibility is questionable, and thus a fact issue exists because he allegedly took an inconsistent position in another lawsuit filed by their attorney.

In that lawsuit, the plaintiff worked for an employment company and was assigned to Administaff's client company who had contracted with a landowner to provide landscaping services. After he was injured on the landowner's premises, the plaintiff received workers' compensation benefits from the temporary employment company's insurance carrier and sued the landowner, Administaff, and its client company for negligence. Although the plaintiff never signed an employment agreement with Administaff and was never leased by Administaff to its client company, Administaff argued that the plaintiff was under the direction and control of the client company and therefore, was Administaff's "borrowed servant." In other words, Administaff claimed it and the client company were both the plaintiff's employers. In fact, when specifically asked at his deposition about whether the client company gave up the right of control of its employees to Administaff, Lange testified there was a "joint right of control." That position is entirely consistent with one taken in this lawsuit.

■ Finally, the Browns argue the employment agreements are not valid because they were not supported by consideration, signed under duress, and unconscionable. These are affirmative defenses to the employment agreements and thus, to the summary judgment. *See* Tex.R.Civ.P. 94. If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment proof sufficient to raise an issue of fact on each element of the defense to avoid summary judgment.

*Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

■ First, as pointed out by Administaff and Aztec in the trial court, the Browns did not properly raise the failure of consideration by **verified** pleading. *See* Tex.R.Civ.P. 93(9); *see also Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991) (holding that in a summary judgment proceeding an objection to an unpleaded affirmative defense must be raised before judgment). Their Sixth Amended Petition does not include an affidavit verifying the facts of that defense. The Browns attempted to supply verification by attaching Mrs. Brown's affidavit to a pleading entitled, "Second Supplemental Petition." However, that verification is ineffective because Mrs. Brown was not a party to the employment agreements and had no personal knowledge of the facts. Because the Browns did not plead their defense under oath, it is waived. *See Murphy v. Canion,* 797 S.W.2d 944, 949 (Tex.App.—Houston [14th Dist.] 1990, no writ). Even if properly raised, the Browns did not offer any summary judgment proof demonstrating the agreements were unsupported by consideration. Consideration is a present exchange bargained for in return for a promise. *Roark,* 813 S.W.2d at 496. Mr. Brown provided services to Administaff and its client company in return for wages. More importantly, Mr. Brown agreed to relinquish any common law action for personal injuries against Administaff and its client company in return for workers' compensation benefits under Administaff's policy covering the client company. In fact, the summary judgment proof shows Mr. Brown sought such benefits for at least three other injuries. Those injuries occurred while he was leased by Administaff to the client company to carry out the client company's business. Clearly, the employment agreements were supported by consideration.

■ Second, the Browns did not offer any summary judgment proof of duress. Duress is a threat to some act which the threatening party has no legal right to do. *Tenneco Oil Co. v. Gulsby Engineering, Inc.,* 846 S.W.2d 599, 604 (Tex.App.—Houston [14th Dist.] 1993, writ denied). The long

standing rule in Texas provides for employment at will terminable at any time by either party, with or without cause, absent an express agreement to the contrary. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993). Because Mr. Brown was an at-will employee, Administaff had the legal right to require Mr. Brown to sign the employment agreements. Even if that were not the case, there is no summary judgment proof that Administaff threatened Mr. Brown if he did not sign it. The only summary judgment proof on that subject is Mr. Brown's affidavit. Although he could not specifically recall signing the employment agreements, Mr. Brown speculates he signed the agreements because "the people at Aztec told [him] that [he] had to do that as part of the rules there." Mr. Brown also states he tried to follow the rules so he could be hired or not be fired. These statements are nothing more than speculative and conclusory. Speculative and conclusory statements are inadequate to defeat competent summary judgment evidence. *Gibson v. Methodist,* 822 S.W.2d 95, 100 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (opinion on motion for rehearing) (holding that expert's affidavit testimony that blood test unavailable at the time of transfusion would have prevented plaintiff from contracting AIDS failed to raise a fact issue as to negligence).

Third, the Browns assert the employment agreements are unconscionable because Mr. Brown cannot read and could not have read the agreements that he signed. The Browns' sole authority for this contention is section 17.45(5) of the Deceptive Trade Practices Act. *See* TEX.BUS. & COM. CODE ANN. 17.41 et seq. (Vernon 1987 and Supp.1996). The execution of the employment agreements were not consumer transactions and thus, the DTPA has no application to this case. Furthermore, it is well-settled that illiteracy will not relieve a party of the consequences of this contract. *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 146 (Tex.App.—Houston [1st Dist.] 1986, no writ). In that case, the court stated:

As a general rule, every person having the capacity to enter into contracts, in the absence of fraud, misrepresentation or concealment, must be held to have known what words were used in the contract and to have known their meaning, and he must also be held to have known and fully comprehended the legal effect of the contract. Therefore if a party is unable to read the contract, he must have it read to him. The rule will not operate, however, where trick or artifice is resorted to for the purpose of preventing the party from reading it or having it read to him.

*Id.* (citations omitted)

In the instant case, there is no summary judgment proof of trick or artifice which prevented Mr. Brown from having the agreements read to him. *See id.* Accordingly, we find the employment agreements signed by Mr. Brown were valid and suggest that he fully contemplated the co-employment relationship he now disputes.

Lastly, we point out that the state legislature now recognizes co-employer relationships for purposes of worker's compensation in staff leasing arrangements identical to the one in this case. Act of September 1, 1993, 74th Leg., R.S., ch. 994, 1993 Tex.Gen.Laws 4346 (codified at TEX.REV.CIV.STAT.ANN. art. 9104); Act of September 1, 1995, ch. 76, 9.20, 1995 Tex.Gen.Laws 635 (codified at TEX.LAB. CODE ANN. 91.001–91.063). In particular, section 91.042(c) of the Labor Code currently provides:

For workers' compensation purposes, a license holder and the license holder's client company shall be co-employers. If a license holder elects to obtain workers' compensation, the client company and the license holder are subject to Sections 406.034 and 408.001.

The staff leasing statute was not in effect at the time of Mr. Brown's alleged injuries. Further, there are no Texas cases prior to the effective date of the act expressly dealing with the precise issue of whether a staff leasing company and its client are co-employers for purposes of employer immunity under the exclusive remedy provision of the Act. In *Cherry, Marshall, Gibson, Pederson, Rodriguez,* and *Regalado,* the courts were not faced directly with the issue of co-employment in part because, unlike this case, suit was brought against only the clients of the

employment companies, not against both entities.[8] Based on the specific facts of this case, we see no reason to disregard the co-employer relationship where the parties expressly contemplated such a relationship.

██ Because: (1) the summary judgment clearly establishes a co-employment relationship; (2) the courts of this state do not prohibit co-employers; and (3) the legislature has expressly recognized such a relationship in the context of workers' compensation, we hold that Administaff and Aztec were co-employers of Mr. Brown. Therefore, both Administaff and Aztec are entitled to immunity under the exclusive remedy provision of the Act. Accordingly, the Brown's negligence suit against Administaff and Aztec is barred by the exclusive remedy provision of the Act and summary judgment was proper. Points of error one through twenty-one are overruled and the trial court's judgment is affirmed.

**8.** Although *Zavala–Nava* involved a suit against the employment agency and its client, the issue of joint employment was not before the court. 820 S.W.2d at 16.